OPINION
 

 ADELE HEDGES, Chief Justice.
 

 Appellant, Richard Longoria, appeals from his conviction for capital murder. A jury found appellant guilty and he was sentenced to imprisonment for life. On appeal, appellant contends that (1) the evidence was legally and factually insufficient to support the verdict, (2) the evidence was insufficient to corroborate accomplice witness testimony, (3) the court erred in its charge submission, (4) the court erred in refusing to hold a healing on his motion for new trial, and (5) the prosecutor made numerous improper jury arguments. We affirm.
 

 I. Background
 

 Appellant was convicted of the capital murder of Harris County Sheriffs Deputy Shane Bennett. Deputies Sean Conrad and Terrence Burk testified that, in the early morning hours of June 12, 2003, they, along with Deputy Bennett, responded to a report of a weapon’s disturbance at Maria Ochoa’s residence. Hearing noises from inside the residence that sounded as if someone was being assaulted, the three deputies entered the home. In a dark, interior room, they were fired upon and returned fire. During the exchange, Deputy Bennett was shot. He later died of his wounds. Subsequent ballistics analysis revealed that the deadly shot was fired from Deputy Conrad’s weapon. Two of the robbers were also shot and killed during the exchange of gunfire.
 

 Maria Ochoa testified that, on the morning of June 12, she was awakened by gun-wielding intruders who corralled everyone in the house into one room, demanded to know where marijuana was being kept in the house, and threatened to kill them. Ochoa’s husband and her two adult daughters also testified regarding the events of that morning. Both daughters testified
 
 *740
 
 that they managed to call 9-1-1 during the encounter.
 

 It is uncontested that appellant was not present at the Ochoa home during the invasion and shooting. Christian Gonzales was the chief witness tying appellant to the crimes committed that morning. He testified that appellant participated in conversations planning the home invasion, provided a handgun for use in the robbery, and served as a lookout for police during the robbery. Additionally, phone records were introduced to demonstrate communication between appellant and others involved in the robbery at the time the robbery was occurring, and appellant’s ex-wife testified that appellant tried to get her to lie about his whereabouts at the time of the robbery.
 

 II. Sufficiency of the Evidence
 

 In his first issue, appellant attacks the legal sufficiency of the evidence to support the verdict. In his third issue, appellant attacks the factual sufficiency of the evidence. Since appellant’s arguments are generally the same under the two issues, we will discuss them together. We utilize the normal standards in conducting our sufficiency review.
 
 King v. State,
 
 29 S.W.3d 556, 562 (Tex.Crim.App.2000) (legal sufficiency standards);
 
 Johnson v. State,
 
 23 S.W.3d 1, 11 (Tex.Crim.App.2000) (factual sufficiency standards). We examine the evidence in light of the elements of the crime as defined by a hypothetically correct jury charge.
 
 Malik v. State,
 
 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The correct charge “would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.”
 
 Id.
 

 A. Theory of the Case
 

 The State’s theory of the case was that appellant was guilty of capital murder in the death of Deputy Bennett— notwithstanding appellant’s absence from the crime scene and notwithstanding that a fellow officer actually shot Bennett — because appellant was criminally responsible for the conduct of his coconspirators in an armed robbery and the coconspirators caused Bennett’s death when they exchanged gunfire with the responding deputies.
 
 [1]
 
 This theory is based on the law of conspiracy, set forth in section 7.02(b) of the Penal Code:
 

 [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.
 

 Tex. Pen.Code Ann. § 7.02(b) (Vernon 2003). It is well-settled in Texas that a person can be found guilty of capital murder as a conspiring party under section 7.02(b).
 
 E.g., Johnson v. State,
 
 853 S.W.2d 527, 535 (Tex.Crim.App.1992);
 
 Cienfuegos v. State,
 
 113 S.W.3d 481, 489-90 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd);
 
 see also Montoya v. State,
 
 810 S.W.2d 160, 165 (Tex.Crim.App.1989) (“the theory of criminal responsibility set forth in Section 7.02(b) has often been applied in capital
 
 *741
 
 murder cases”).
 
 [2]
 
 Thus, under section 7.02(b), if the evidence demonstrated that appellant conspired with others to commit the robbery of Ochoa’s residence and that during the robbery, one of the coconspira-tors committed capital murder, appellant could be held criminally responsible for the capital murder if it was in furtherance of the conspiracy’s unlawful purpose and should have been anticipated.
 

 The Court of Criminal Appeals has held that a person can be found guilty of capital murder when that person (or an accomplice) engages in a gun battle with police officers, during which one officer shoots and kills another officer.
 
 Dowden v. State,
 
 758 S.W.2d 264, 272-8 (Tex.Cim.App.1988) (stating that the defendant caused the officer’s death, even though officer was shot by fellow officer during gun battle);
 
 Blansett v. State,
 
 556 S.W.2d 322, 324-26 (Tex.Crim.App.1977) (affirming defendant’s capital murder conviction based on law of parties);
 
 see also Pettigrew v. State,
 
 999 S.W.2d 810, 812-13 (Tex.App.-Tyler 1999, no pet.) (affirming murder conviction of defendant who shot at a rival gang resulting in an innocent bystander’s being shot by a member of the rival gang).
 
 [3]
 

 Dowden
 
 and
 
 Blansett
 
 were companion cases involving a raid on a jail facility to free a prisoner.
 
 Dowden,
 
 758 S.W.2d at 271-2;
 
 Blansett,
 
 556 S.W.2d at 324. During the raid, Dowden engaged in a gun battle with police officers, and one of the officers was shot and killed by another officer.
 
 Blansett,
 
 556 S.W.2d at 324. The court upheld the capital murder convictions of both Dowden and his accomplice, Blansett.
 
 [4]
 
 The court reasoned in both cases that although an innocent third party may have actually shot the decedent, it was the conduct of the appellants themselves, as principal and accomplice, that caused the death, citing Penal Code section 6.04(a). Tex. Pen.Code Ann. § 6.04(a)
 
 [5]
 
 ;
 
 Dowden,
 
 758 S.W.2d at 271-2;
 
 Blansett,
 
 556 S.W.2d at 324.
 
 [6]
 

 
 *742
 
 Thus, under Texas law, appellant could be found guilty of capital murder if the evidence demonstrated that appellant conspired with others to commit the robbery of Ochoa’s residence, that during the robbery, one or more of the conspirators exchanged gunfire with the responding deputies in furtherance of the conspiracy’s unlawful purpose and causing Deputy Bennett’s death, and that his death should have been anticipated. The jury charge submitted these elements to the jury, albeit not in perfect form. However, we analyze the evidence under a hypothetically correct charge.
 
 Malik,
 
 953 S.W.2d at 240.
 

 B. The Evidence
 

 In making his sufficiency arguments, appellant does not deny that several armed men invaded the Ochoa residence and subsequently exchanged gunfire with police officers resulting in the death of Deputy Bennett. Instead, appellant centers his attack on the evidence allegedly connecting him with the home invasion and Bennett’s murder.
 

 Christian Gonzales testified that, on June 11, 2002, he, Daniel Damien, Carlos Ramirez, and Benjamin Gonzales discussed robbing someone. They later went to appellant’s mother’s house and talked about taking sixty pounds of marijuana from a residence. Christian testified that appellant was present during the discussion and that he was “involved in the conversation.” The plan called for Christian to drop the others off near the house and then ride around until they were ready to be picked up. Appellant’s role was to look for police officers while riding around in a car and to call the others on his cellular telephone. Christian also testified that appellant provided a handgun for use in the robbery. Christian said that appellant “[rode] around looking out” and later called him to tell him police were in the neighborhood. Cell phone records were introduced that showed numerous calls were made from appellant’s cell phone to the cell phones of other participants during and immediately after the home invasion. There was also evidence that a handgun found at the Ochoa residence was of the same caliber as the weapon Christian said appellant provided.
 

 Appellant first contends that Christian never testified to any words or acts of appellant that were sufficient to show agreement or participation in the conspiracy to commit robbery. Appellant specifically argues that saying appellant was “involved” in a conversation did not demonstrate agreement. However, the jury was entitled to consider the entirety of Gonzales’s testimony and was not required to consider each statement in isolation. The jury could have reasonably deduced that appellant agreed to commit the robbery and was an active participant based on Christian’s testimony that (1) appellant was involved in a conversation in which a robbery was planned, (2) the resulting plan called for appellant to act
 
 *743
 
 as lookout, (3) appellant later called and said police were in the neighborhood, and (4) appellant provided a handgun for use in the robbery.
 
 [7]
 

 Additionally, the telephone records provide strong support for Christian’s version of events. Appellant argues that the only thing these records demonstrate is that calls were made from one phone number to other numbers. He asserts that the records do not prove who made the calls or what the substance was of the conversations. However, that calls from a person’s cellular telephone were made by that person is a natural and permissible assumption for the jury to make. In his factual sufficiency arguments, appellant further points out that Roland Garcia testified that he could have been using appellant’s telephone that night but did not remember. This testimony was particularly vague and does little to negate the clear implications of the telephone records.
 

 Also pointing to appellant’s guilt was a statement given to police officers by Garcia, who said that appellant called him on June 12 and told him “they got two of my people.” Appellant suggests that this statement could be merely a reference to the fact the police had killed people with whom appellant had a relationship (Daniel Damien, for example, was apparently appellant’s cousin). It was reasonable, however, for the jury to have concluded that appellant was referring to the fact that the police had killed two of his coconspirators. Also testifying against appellant was his ex-wife, Esther Tsanais, who stated that appellant called her on June 12 and asked her to tell the police that he had been with her on the previous night even though he had not been with her. Appellant suggests that this statement does not demonstrate his guilt; rather, it shows only his attempt to secure an alibi because he had been alone on the night in question. The jury could have inferred guilt from this testimony because an attempt to procure a false alibi is some evidence of guilt.
 
 See, e.g., Huffman v. State,
 
 775 S.W.2d 653, 661 (Tex.App.-El Paso 1989, pet. ref'd).
 
 [8]
 

 In sum, there was proof that appellant conspired with others to commit the robbery of Ochoa’s residence, that during the robbery, one or more of the conspirators exchanged gunfire with the responding deputies in furtherance of the conspiracy’s unlawful purpose and causing Deputy Bennett’s death, and that his death should
 
 *744
 
 have been anticipated. The evidence was legally and factually sufficient to support the verdict. Appellant’s first and third issues are overruled.
 

 C. Accomplice Corroboration
 

 In his second issue, appellant contends that the evidence was insufficient to corroborate the testimony of Christian Gonzales, who was an accomplice witness. “A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.” Tex Code Cbim. PROC. Ann. art. 38.14 (Vernon 1979).
 
 [9]
 
 As discussed above, the main evidence against appellant was the testimony of Christian Gonzales, who was the getaway driver for the robbery. Therefore, he was an alleged accomplice, and in order for appellant’s conviction to stand, there must be some other evidence connecting appellant to the crime.
 

 The test for weighing the sufficiency of corroborative testimony is to eliminate from consideration the accomplice witness’s testimony and examine the other evidence to see whether there is any evidence which tends to connect the accused with the commission of the crime.
 
 Hernandez v. State,
 
 939 S.W.2d 173, 176 (Tex.Crim.App.1997). The corroborative evidence need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense; the accomplice witness rule is satisfied if there is some non-accomplice evidence that tends to connect the accused to the commission of the offense alleged in the indictment.
 
 Id.
 
 We view the evidence in the light most favorable to the jury’s verdict.
 
 Gill v. State,
 
 873 S.W.2d 45, 48 (Tex.Crim.App.1994).
 

 The main pieces of corroborative evidence in the present case are the cellular telephone records. Appellant contends that all these records demonstrate is that a call was made from one phone number to another. He asserts that the records do not prove the maker of the calls or their substance. There is a natural and permissible assumption that calls from a person’s cellular telephone were made by that person. Read in conjunction with the testimony of Detective Allen Beall, the records show a flurry of communications and attempted communications between appellant, Christian Gonzales, and Daniel Damien (one of the home invaders who was killed at the scene) during the course of the robbery and immediately thereafter. The records and testimony are strong circumstantial evidence that tend to connect appellant to the crime.
 
 See Nolley v. State,
 
 5 S.W.3d 850, 853 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (stating corroborative evidence may be circumstantial and it need not directly link appellant to the crime as long as it
 
 tends
 
 to link appellant to the crime). Appellant points out, however, that Roland Garcia testified that he could have been using appellant’s telephone that night but did not remember. This testimony was particularly vague and does little to negate the clear implications of the telephone records.
 

 Two other pieces of evidence are relevant to our inquiry: (1) appellant’s ex-wife testified that he told her to lie and say that he was with her on the night in question, and (2) Garcia testified appellant called him the day after the robbery and told him “they got two of my people.” Suspicious statements and conduct by the accused can be considered in determining whether accomplice testimony is sufficiently corroborated.
 
 See Killough v. State,
 
 718 S.W.2d 708, 711 (Tex.Crim.App.1986);
 
 *745
 

 Spratt v. State,
 
 881 S.W.2d 65, 67 (Tex.App.-El Paso 1994, no pet.). Although neither statement would necessarily corroborate the accomplice testimony on its own, each constitutes additional evidence tending to connect appellant to commission of the crime.
 
 [10]
 

 See Munoz v. State,
 
 853 S.W.2d 558, 559 (Tex.Crim.App.1993) (stating that reviewing court should look to all facts and circumstances as furnishing corroboration). Based on the foregoing, we hold that the accomplice testimony of Christian Gonzales was sufficiently corroborated by other evidence tending to connect appellant to the charged offense. Appellant’s second issue is overruled.
 

 III. Charge Issues
 

 In his fourth issue, appellant argues that (1) certain language in the charge constituted a comment on the weight of the evidence and (2) the charge was disjointed and confusing. Regarding the first contention, appellant specifically asserts that the trial court erred in including the language “and/or Sean Conrad” in the application paragraph because such language constituted a comment on the weight of the evidence.
 
 [11]
 
 It is error for a court to comment in the charge on the weight of the evidence. Tex.Code Ckim. PROC. Ann. art. 36.14 (Vernon Supp.2004);
 
 Giesberg v. State,
 
 984 S.W.2d 245, 250 (Tex.Crim.App.1998). Appellant argues that, because the application paragraph failed to inform the jury how appellant could be held criminally responsible for Conrad’s actions in shooting Bennett, including Conrad’s name misled the jury into thinking the court was charging them that appellant was necessarily responsible for Conrad’s actions.
 

 The jury charge in criminal trials includes an abstract portion, defining concepts and terms, as well as application paragraphs, applying the law to the facts and asking ultimate guilt/innocence questions of the jury.
 
 See Plata v. State,
 
 926 S.W.2d 300, 302-03 (Tex.Crim.App.1996),
 
 overruled on other grounds, Malik v. State,
 
 953 S.W.2d 234, 239 (Tex.Crim.App.1997);
 
 Degrate v. State,
 
 86 S.W.3d 751, 752-53 (Tex.App.-Waco 2002, pet. ref'd). Generally, when a defendant is tried under a vicarious criminal responsibility theory, the application paragraph must either (1)
 
 *746
 
 specify all conditions that must be met for conviction on that basis or (2) refer to instructions in the abstract portion pertaining to criminal responsibility for another’s conduct.
 
 See Plata,
 
 926 S.W.2d at 304;
 
 Degrate,
 
 86 S.W.3d at 753.
 

 Appellant complains that the application paragraphs in the present case did neither. However, the charge before us contains the following paragraph, which is clearly written as an application paragraph although it appears in the abstract portion of the charge:
 

 [I]f you find from the evidence beyond a reasonable doubt that the death of Shane Bennett would not have occurred but for the [appellant’s] conduct; or, but for the conduct of another person, namely, Benjamin Gonzalez and/or Christian Gonzales and/or Carlos Ramirez and/or Daniel Damien and/or Sean Conrad, for whom [appellant] is criminally responsible, ... you will find the defendant criminally responsible. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not criminally responsible and say by your verdict “Not Guilty.”
 

 Thus, contrary to appellant’s assertion, by including the phrase “for whom [appellant] is criminally responsible” the court did refer to the abstract definitions of criminal responsibility in the application paragraphs, albeit out of place.
 
 [12]
 
 Thus, appellant’s first argument is without merit.
 

 In his second argument under this issue, Appellant contends that the charge was in error because it was disjointed and potentially confusing to jurors. With this we agree. The seventeen-page charge included every conceivable theory for conviction, whether as a principal or as a party, regardless of whether the State argued the theory or there was any evidence to support its submission. Further, the abstract and application portions do not appear to be ordered in a rational manner. “Jurors should not be required and expected,
 
 and they are not under our law,
 
 to put together pieces of what may appear to them to be a jigsaw puzzle to determine which elements must be proved in order to find that the defendant committed the offense which he was charged with committing.”
 
 Doyle v. State,
 
 631 S.W.2d 732, 737 (Tex. Crim.App.1982) (emphasis in original);
 
 see also Degrate,
 
 86 S.W.3d at 753 (quoting Doyle). Accordingly, we find the trial court erred in submitting this charge.
 

 However, appellant did not object on this basis before the trial court.
 
 See
 
 Tex.R.App. P. 33.1(a).
 
 [13]
 
 When a party fails to properly object to alleged charge error, the proper standard for determining whether reversible error occurred is whether the party suffered “egregious harm.”
 
 Almanza v. State,
 
 686 S.W.2d 157, 171 (Tex.Crim.App.1985). In making this
 
 *747
 
 determination, we examine the charge in its entirety, the state of the evidence, the argument of counsel, and any other relevant information in the record.
 
 Id.
 
 Here, the charge contained comprehensive instructions regarding when one person can be held criminally responsible for the conduct of another. Furthermore, the charge contained the misplaced application paragraph discussed above, which indicated that the jury could not convict appellant unless it found him criminally responsible under the instructions given. The evidence, detailed above under issues one through three, supported the conclusion that appellant was guilty, but only by application of certain of the vicarious criminal responsibility theories contained in the charge. Lastly, the prosecutor’s closing argument succinctly traced the steps required for appellant to be found guilty of capital murder, including explicit reference to the abstract and application sections as well as to the theories of criminal responsibility relating to conspirators. Under these circumstances, we find that appellant was not egregiously harmed by the alleged charge error.
 
 Id.
 
 Appellant’s fourth issue is overruled.
 

 In his fifth issue, appellant contends that the trial court improperly commented on the weight of the evidence by instructing the jury to find him criminally responsible for the acts of others. This argument is tied to the misplaced application paragraph, set out above, in which the court instructed that appellant could not be held criminally responsible for' the death of Shane Bennett unless it would not have occurred but for appellant’s conduct or the conduct of another person (including Sean Conrad) for whom appellant was criminally responsible. Appellant here contends that the phrasing of the instruction left the jury with no conclusion but that appellant was criminally responsible for Conrad’s conduct. We do not read the paragraph in that manner. The phrase “for whom [appellant] is criminally responsible” is clearly tied to the instructions on criminal responsibility.
 

 In
 
 Whaley v. State,
 
 717 S.W.2d 26 (Tex.Crim.App.1986), the court addressed a very similar issue to the one presented here. The court concluded that, although the language “for whom he was criminally responsible” was “erroneous and ambiguous,” it did not comment on the weight of the evidence given the presence of adjoining paragraphs defining when someone can be criminally responsible for another’s conduct.
 
 Id.
 
 at 31-33. As in
 
 Whaley,
 
 the charge here contained adjoining paragraphs explaining when someone could be held responsible for another’s conduct.
 
 [14]
 
 Accordingly, we find the charge was not a comment on the weight of the evidence.
 

 Furthermore, even if we consider this submission error, appellant clearly did not preserve the issue by a timely and sufficiently specific objection. Tex.R.App. P. 33.1(a)(1).
 
 [15]
 
 Thus, again, reversal would
 
 *748
 
 be required only on a finding of egregious harm.
 
 Almanza,
 
 686 S.W.2d at 171. For the same reasons discussed in the harm analysis under issue four, we find that the alleged error would not have been egregiously harmful to appellant.
 
 See Whaley,
 
 717 S.W.2d at 33. Accordingly, appellant’s fifth issue is overruled.
 

 IV. Motion for New Trial
 

 In his sixth issue, appellant contends that the trial court abused its discretion in refusing to hold a hearing on his motion for new trial.
 
 See Landers v. State,
 
 110 S.W.3d 617, 626 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (stating that a trial court abuses its discretion in failing to hold a hearing when an accused presents a motion for new trial raising matters that could entitle him or her to relief and that are not determinable from the record). The State counters that appellant waived any right to a hearing by failing to timely present the motion to the trial court.
 
 See
 
 Tex.RApp. P. 21.6 (requiring presentment within ten days of filing);
 
 Landers,
 
 110 S.W.3d at 626 (holding that failure to timely present motion waived right to hearing). To prove presentment, the record must contain more than just proof that the motion was timely filed; it must also contain proof that the movant actually delivered the motion to the trial court or that the motion was otherwise brought to the trial court’s attention.
 
 Carranza v. State,
 
 960 S.W.2d 76, 79 (Tex.Crim.App.1998);
 
 Landers,
 
 110 S.W.3d at 626.
 

 We note that the record contains a “Notice of Presentment of Motion for New Trial.” This document requested that the court permit presentment of the motion to the court coordinator.
 
 [16]
 
 However, the record is devoid of any showing that appellant actually presented the motion for new trial (or the “Notice of Presentment”) to either the trial court or the court coordinator. There is no ruling on the motion or the notice, no signature or notation on the motion or any proposed order, and no hearing date noted on the docket sheet or on any type of form.
 
 See Carranza,
 
 960 S.W.2d at 79-80 (providing nonexclusive list of methods of proof);
 
 Estrella,
 
 82 S.W.3d at 486 (finding that hearing date in “case setting form” was sufficient proof of presentment to court coordinator). Although the final entry on the court’s docket sheet states “Mo. for New Trial filed,” this notation is not sufficient to show presentment.
 
 Cf. Daniels v. State,
 
 63 S.W.3d 67, 69 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (holding that docket entry stating “Motion for New Trial was presented to the Court” was sufficient to show presentment)
 
 [17]
 
 ;
 
 Enard v. State,
 
 764 S.W.2d 574, 575 (Tex.App.-Houston [14th Dist.] 1989, no pet.) (holding motion was not timely presented when nothing in record indicated court was on notice of request for hearing).
 
 [18]
 
 A trial court cannot abuse its discretion by deny-
 
 *749
 
 mg a motion for new trial by operation of law when the motion was not timely presented.
 
 Birdwell v. State,
 
 996 S.W.2d 381, 384 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Accordingly, appellant’s sixth issue is overruled.
 

 Y. Closing Argument
 

 In his seventh through thirteenth issues, appellant attacks various aspects of the prosecutor’s closing argument. There are four permissible areas of argument for prosecutors: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to argument by defense counsel, and (4) pleas for law enforcement.
 
 Wesbrook v. State,
 
 29 S.W.3d 103, 115 (Tex.Crim.App.2000). The Court of Criminal Appeals has recently explained that when the trial court instructs the jury to disregard improper argument, the proper analysis of the instruction’s efficacy is not harmless error, but abuse of discretion.
 
 Hawkins v. State,
 
 135 S.W.3d 72, 76-77 (Tex.Crim.App.2004). This analysis focuses on (1) the “severity of the misconduct” (also defined as “the magnitude of the prejudicial effect of the prosecutor’s remarks”), (2) the curative measures taken by the trial court, and (3) the certainty of the conviction absent the conduct.
 
 See id.
 
 at 77.
 
 [19]
 

 Appellant first contends that the prosecutor commented on appellant’s failure to testify when he said “[t]he facts and the law in this case are almost uncontroverted. Mr. Longoria and [defense counsel], none of them contest the fact that a terrible aggravated robbery — ” When defense counsel objected to the statement, the trial court sustained the objection and instructed the jury to disregard but refused to declare a mistrial.
 

 It is well established that “[p]rosecutorial comment that refers to an accused’s failure to testify violates the accused’s Fifth Amendment right against compelled self-incrimination.”
 
 Canales v. State,
 
 98 S.W.3d 690, 695 (Tex.Crim.App.2003) (citing U.S. Const, amend. V);
 
 see also
 
 Tex. Const, art. I, § 10; Tex.Code CRiM. PROC. Ann. art. 38.08 (Vernon 1979). A prosecutor’s statement that the evidence is “uncontroverted” or “not contested” has been interpreted as a comment on the failure to testify.
 
 See, e.g., Angel v. State,
 
 627 S.W.2d 424, 425-26 (Tex.Crim.App.1982).
 

 In order to constitute a violation of the ... privilege against self-incrimination, the language must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant’s failure to testify. The challenged comment must be viewed from the standpoint of the jury and the language must be more than an implied or indirect allusion to defendant’s silence. Further, if the remark called the jury’s attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed.
 

 Id.
 
 at 426;
 
 see also Wead v. State,
 
 129 S.W.3d 126, 130 (Tex.Crim.App.2004).
 

 Even if we assume that the statements were an improper reference to the failure to testify, we find the error to have been cured. The trial court sustained defense counsel’s objection and instructed the jury to disregard the statements.
 
 [20]
 
 In most circumstances, an instruction to disregard improper argument is considered a sufficient response
 
 *750
 
 by the trial court.
 
 See Wesbrook,
 
 29 S.W.3d at 115;
 
 Phillips v. State,
 
 130 S.W.3d 343, 355-56 (Tex.App.-Houston [14th Dist.] 2004, no pet. h.). This is true even for comments on the defendant’s failure to testify, except in the most blatant cases.
 
 Moore v. State,
 
 999 S.W.2d 385, 405-06 (Tex.Crim.App.1999). Given the nature of the prosecutor’s statements and the circumstances of this case discussed above, we do not believe that the statements were so blatant as to render the instruction to disregard ineffective.
 
 See id.
 
 at 406. Accordingly, appellant’s seventh issue is overruled.
 

 Appellant next contends that the prosecutor personally attacked defense counsel when he stated: “Don’t let [defense counsel] put a guilt trip on you like he tried to put on Sean Conrad and Terry Burks. I apologize to every man and woman in uniform in this courtroom for the comments [defense counsel] made about Mr. Burks — .” These comments were apparently in response to statements in defense counsel’s closing, wherein he repeatedly argued that officers, including Conrad and Burks, made mistakes at the crime scene. A prosecutor has some leeway to respond to particular points made in defense counsel’s closing.
 
 See Wesbrook,
 
 29 S.W.3d at 115.
 

 The trial court sustained defense counsel’s objection and instructed the jury to disregard. Except in extreme situations, a curative instruction is a sufficient curative measure, and no mistrial is necessary.
 
 Hawkins,
 
 135 S.W.3d at 77. Beyond stating that the comments were “so inflammatory, improper, and prejudicial” that the instruction could not cure the harm, appellant offers no analysis of the trial court’s alleged abuse of discretion in refusing to declare a mistrial. Because the prosecutor’s statement was essentially a response to defense arguments, we do not consider it as particularly offensive or flagrant.
 
 See Wesbrook,
 
 29 S.W.3d at 116. The trial court did not abuse its discretion in refusing a mistrial. Accordingly, appellant’s eighth issue is overruled.
 

 Appellant next complains about the following argument:
 

 [Prosecutor]: You know, I always get worried whenever lawyers are up here talking and start wrapping themselves up in the flag. I think something- — ”
 

 [Defense Counsel]: Objection. Improper comment. I object.
 

 The Court: Overruled.
 

 [Prosecutor]: I don’t mean any disrespect with [defense counsel]. I’m just saying every time I hear someone wrapping themselves up in the flag I think what are they trying to hide? They’re trying to wrap up Richard Longoria in the flag.... It’s offensive to wrap himself up in the flag of this country and ask you to forgive him his sins because it’s the right thing to do under the flag.... I suggest to you that flag has nothing to do with Richard Longoria.
 

 Appellant contends this argument (1) constituted an improper personal attack on defense counsel, (2) invited jurors to speculate on what the defense might be hiding, and (3) urged jurors to ignore their oaths and find appellant was not entitled to the protection of the flag or the Constitution. However, the only portion of the argument to which an objection was made, the first sentence, does none of these things. During defense counsel’s closing argument, he made references to the flag and the Iraq War (Operation Iraqi Freedom was ongoing at the time of trial), and he stated that whether the jury found appellant guilty or not guilty they would have done a “true and American thing either way.” Thus, the prosecutor’s statement suggesting that defense counsel had “wrapped” himself in the flag was a per
 
 *751
 
 missible response to defense counsel’s argument.
 
 See Fuentes,
 
 991 S.W.2d at 274. The remainder of the comments that appellant complains about on appeal were not objected to in the trial court. Thus, no arguments concerning these comments were preserved for appeal.
 
 See
 
 Tex.R.App. P. 33.1(a);
 
 Mathis v. State,
 
 67 S.W.3d 918, 926-27 (Tex.Crim.App.2002). Accordingly, appellant’s ninth issue is overruled.
 

 Appellant next asserts error in the trial court’s refusal to declare a mistrial after the prosecutor suggested appellant had “manipulate!® the strings from a safe distance” and “if you let him walk out of here a free man ... he’s going to find him more crash dummies — .” Defense counsel objected, and the trial court sustained the objection and instructed the jury to disregard but denied a mistrial. On appeal, appellant contends that the argument was improper because (1) it suggested appellant earned his livelihood committing the type of offense for which he was on trial, (2) it inferred appellant had committed other similar crimes, and (3) it encouraged the jury to speculate that the accused would continue his illegal activity.
 

 Prior to the quoted comments above, the prosecutor had made reference to appellant’s being “the bossman” and to the men who physically had carried out the robbery as working for appellant. Although these earlier statements could arguably be interpreted to mean that appellant had previously engaged in such illegal activity, defense counsel did not object to them. Thus, any alleged error associated with them has not been preserved for appellate review.
 
 See
 
 Tex.R.App. P. 33.1(a);
 
 Mathis,
 
 67 S.W.3d at 926-27. The only objection was to the argument suggesting that if appellant was acquitted he might commit another crime. Such argument, however, falls within the realm of permissible pleas for law enforcement.
 
 Pineda v. State,
 
 2 S.W.3d 1, 11 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd);
 
 Moyer v. State,
 
 948 S.W.2d 525, 531 (Tex.App.-Fort Worth 1997, pet. ref'd);
 
 Long v. State,
 
 820 S.W.2d 888, 895 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd). Accordingly, we find the objected-to statement was not improper. Appellant’s tenth issue is overruled.
 

 Appellant next complains about the prosecutor’s suggestion that members of appellant’s family hid a witness. This issue concerns the following exchange:
 

 [Prosecutor]: And how dare these lawyers accuse me of hassling [appellant] by having his children come to a Grand jury [sic]. We had the family come to Grand Jury, in response to his argument, Your Honor, because we had a good reason to believe the Longorias were hiding Mark Zimmerman—
 

 [Defense Counsel]: Objection. Outside the scope of the record.
 

 The Court: Overruled.
 

 [Prosecutor]: Where was Mr. Zimmerman? Let him take the stand to answer some questions, and he isn’t here. That’s why we used the Grand Jury because it’s the only way we can try to get people down here to give you all the evidence we can. And we didn’t bring his children in the in the [sic] Grand Jury either.
 

 Appellant contends that the trial court erred in overruling his objection because the comments were outside the record.
 
 [21]
 

 See, e.g., Jones v. State,
 
 38 S.W.3d 793, 796 (Tex.App.-Houston [14th Dist.] 2001, pet.
 
 *752
 
 ref'd) (holding argument outside the record was improper).
 

 Under the invited argument rule, a prosecutor is entitled to respond to defensive argument that goes outside the record, so long as the prosecutor’s argument does not stray beyond the scope of the invitation.
 
 Wilson v. State,
 
 938 S.W.2d 57, 60 (Tex.Crim.App.1996);
 
 Drew v. State,
 
 76 S.W.3d 436, 462-63 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). During his close, defense counsel suggested that prosecutors had brought members of appellant’s family before the grand jury to intimidate them because the prosecutors otherwise had no evidence against appellant.
 
 [22]
 
 The objected-to remarks of the prosecutor were properly responsive to this defensive argument because they attempted to explain the real reason why family members were brought before the grand jury. Accordingly, the trial court did not err in overruling the objection. Appellant’s eleventh issue is overruled.
 

 Appellant next complains about the prosecutor’s comments suggesting that appellant’s ex-wife was brought before the grand jury to give her a cover for cooperating with the prosecution.
 
 [23]
 
 Appellant contends that the statements improperly raised matters outside the record because they suggested that he had threatened his ex-wife. Again, however, this explanation of why appellant’s ex-wife was brought before the grand jury constituted a proper response to defense counsel’s argument that the State called her in to intimidate her.
 
 See Wilson,
 
 938 S.W.2d at 60;
 
 Drew,
 
 76 S.W.3d at 462-63.
 

 Additionally, shortly after the defense objection was sustained, the prosecutor went on to state “she’s not afraid of law enforcement.... She’s afraid of that man, [appellant]. She’s afraid of what he will do.... That’s an honest woman. That’s a courageous woman.” Defense counsel did not object to these statements. Where the objected-to argument is repeated without objection, no reversible error exists.
 
 McFarland v. State,
 
 845 S.W.2d 824, 840 (Tex.Crim.App.1992);
 
 Moyer v. State,
 
 948 S.W.2d 525, 531 (Tex.App.-Fort Worth 1997, pet. ref'd). Accordingly, appellant’s twelfth issue is overruled.
 

 Lastly, appellant contends that the cumulative effect of the prosecutor’s improper arguments denied him a fair and impartial trial. As discussed under the prior issues, several of appellant’s assigned errors were cured by jury instructions, while others were not preserved by timely objection. Under this issue, appellant cites numerous other instances of improper argument, but a review of the citations reveals that no objections were made. Accordingly, no arguments were preserved for appellate review in regard to these statements.
 
 See Wead,
 
 129 S.W.3d at 130 (holding court of appeals erred in considering . appellate issue that argument commented on the failure to testify when such objection was not made in the trial court). As stated, to the extent any prosecutorial
 
 *753
 
 argument was improper, we find that the trial court’s instructions to disregard were sufficient; therefore, there was no abuse of discretion in denying a mistrial.
 
 See Hawkins,
 
 135 S.W.3d at 77;
 
 Wesbrook,
 
 29 S.W.3d at 116. Thus, appellant has failed to demonstrate that the cumulative effect of any improper argument deprived him of a fair and impartial trial. Appellant’s thirteenth issue is overruled.
 

 The trial court’s judgment is affirmed.
 

 [1]
 

 . The charge authorized the jury to convict appellant under three theories of capital murder: (1) as a principal, (2) as a party under section 7.02(a)(2) of the Texas Penal Code, or (3) as a conspirator under the law of parties as contained in Penal Code section 7.02(b). Tex. Pen.Code Ann. § 7.02(a)(2), (b) (Vernon 2003). The State’s proof and argument were focused on the third theory.
 

 [2]
 

 . Note, however, that the death penalty cannot be imposed on someone who was only a party to murder.
 
 Johnson,
 
 853 S.W.2d at 535 (citing
 
 Cuevas v. State,
 
 742 S.W.2d 331, 343 (Tex.Crim.App.1987)).
 

 [3]
 

 . It should be noted that the court in
 
 Pettigrew
 
 based its decision on a theory of transferred intent. 999 S.W.2d at 812-13.
 

 [4]
 

 . In
 
 Blansett,
 
 the court quoted the California Supreme Court as stating:
 

 When the defendant or his accomplice ... intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder.... Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice.
 

 556 S.W.2d at 325-26 (quoting
 
 People v. Gilbert,
 
 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365, 373 (1965),
 
 rev’d on other grounds,
 
 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)).
 

 [5]
 

 . Section 6.04(a) contains the generally applicable definition of "causation” for the Penal Code. It states
 

 A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.
 

 Tex. Pen.Code Ann. § 6.04(a). This language was included almost verbatim in the jury charge before us.
 

 [6]
 

 . Appellant argues that he could not be held responsible under
 
 Blansett
 
 because he was not present at the time Bennett was killed. However, a defendant need not have been physically present in order to be held responsible as a party, either under section 7.02(a)(2), as alleged in
 
 Blansett,
 
 or under section 7.02(b), as alleged here.
 
 See Otto v. State,
 
 95 S.W.3d 282, 284-85 (Tex.Crim.App.
 
 *742
 
 2003) (affirming conviction as a party under section 7.02(a)(2), even though defendant not present at scene of crime);
 
 Cienfuegos,
 
 113 S.W.3d at 489-90 (affirming capital murder conviction based on section 7.02(b) even though defendant was not present at scene of the crime);
 
 Hernandez v. State, 52
 
 S.W.3d 268, 278-79 (Tex.App.-Corpus Christi 2001, no pet.) (holding that presence at the scene is not required under section 7.02(a)(2));
 
 Pike
 
 v.
 
 State,
 
 758 S.W.2d 357, 362 (Tex.App.-Waco 1988) (holding defendant’s absence at the scene of the crime did not absolve him of criminal liability under section 7.02(b)), vacated
 
 on other grounds,
 
 772 S.W.2d 130 (Tex.Crim.App.1989). Further, although the charge in
 
 Blansett
 
 apparently required that the jury find the defendant was present at the scene in order to find he was a party to the crime, the Court of Criminal Appeals did not expressly base its decision on that point. 556 S.W.2d at 326 n. 5.
 

 [7]
 

 . The testimony that appellant provided a handgun also supports the jury's conclusion that Deputy Bennett’s death should have been anticipated as a result of the robbery.
 
 See Tippitt v. State,
 
 41 S.W.3d 316, 324-25 (Tex.App.-Fort Worth 2001, no pet.) (listing cases holding that proof of knowledge that a gun would be used in a robbery supported finding that resulting murder should have been anticipated). Appellant suggests that Christian did not testify that appellant provided the weapon
 
 after
 
 the group disclosed their plans; however, Christian clearly stated that appellant provided the weapon for use in the robbery. Appellant further emphasizes that ownership of the gun was not independently established, and none of the tests conducted on the gun connected it to him. However, neither point necessarily diminishes the strength of Christian’s testimony. Even if appellant did not own the gun, he still could have provided it for the robbery, and after the weapon was used by another person in a gun battle, it is not surprising that forensics tests could no longer connect appellant with it.
 

 [8]
 

 . In his factual sufficiency argument, appellant additionally points to portions of testimony from Garcia (an associate of appellant), Carlos Baeza (a friend of appellant’s family), and Josephine Cardenas (appellant’s sister) as casting doubt on Gonzales’s testimony. However, as fact finder, it is generally the jury's duty to reconcile conflicts in the evidence and to determine the weight and credibility to be assigned to testimony.
 
 Santos v. State,
 
 116 S.W.3d 447, 459-60 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). We will not reverse the jury’s findings on the basis of these partisan witnesses' testimony.
 

 [9]
 

 . The jury was charged in accordance with article 38.14.
 

 [10]
 

 . It is less likely that an innocent person would feel the need to solicit a false alibi than would a person who was involved in the crime.
 
 See, e.g., Huffman,
 
 775 S.W.2d at 661. Also, under the circumstances, appellant’s statement that "they got two of my people” suggests that he was involved with the people and the crime. Appellant cites
 
 $9,050.00 in U.S. Currency v. State,
 
 874 S.W.2d 158, 162 (Tex.App.-Houston [14th Dist.] 1994, writ denied), for the proposition that when evidence gives rise to two opposing inferences, neither of which is more probable, neither fact can be inferred from that evidence. Although the cited testimony may be susceptible of two opposing inferences, the inference tending to link appellant to commission of the crime is stronger in each instance.
 

 [11]
 

 . Appellant complains of the following passage:
 

 ... or if you find from the evidence beyond a reasonable doubt that the defendant, Richard Longoria, and Benjamin Gonzalez and/or Christian Gonzales and/or Carlos Ramirez and/or Daniel Damien entered into an agreement to commit the felony offense of robbery of Maria Ochoa, and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 12th day of June, 2002, while in the course of committing such robbery of Maria Ochoa, Benjamin Gonzalez and/or Christian Gonzales and/or Carlos Ramirez and/or Daniel Damien
 
 and/or Sean Conrad
 
 intentionally caused the death of Shane Bennett by shooting Shane Bennett with a deadly weapon, namely a firearm, and that the death of Shane Bennett was an offense that the defendant should have anticipated as a result of carrying out the conspiracy, then you will find the defendant guilty of capital murder, as charged in the indictment, (emphasis added).
 

 [12]
 

 . It should also be noted that other portions of the application paragraphs referred to other abstract instructions regarding criminal responsibility, including those relating to conspiracy. The language used by the court to refer to the criminal responsibility instructions is the subject of appellant’s fifth issue and is discussed in more detail below.
 

 [13]
 

 . Appellant objected to the inclusion of the "and/or Sean Conrad” language on the ground that it constituted a comment on the weight of the evidence. However, the only explanation appellant offered was to cite to a wholly inapplicable civil case on charge error:
 
 Stern v. State ex rel Ansel,
 
 869 S.W.2d 614 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Appellant made no reference to criminal responsibility or the need to reference criminal responsibility in the application paragraph or the failure of the paragraph to refer to the instructions. Nor did appellant suggest the charge as proposed was confusing or out of order. Appellant's requested application paragraph was identical to the submitted paragraph except for the deletion of the "and/or Sean Conrad” language.
 

 [14]
 

 . Appellant tries to distinguish
 
 Whaley
 
 on the ground that the objectionable language in that case came after the definitions, whereas the language in this charge comes before the definitions. This argument is a distinction without a difference. The key fact is that the phrase “criminally responsible” is clearly and adequately defined in the charge.
 
 See Plata,
 
 926 S.W.2d at 304;
 
 Whaley,
 
 717 S.W.2d at 32-33. It is an additional factor worth considering that the definitional paragraph is adjacent to the paragraph of which appellant complains.
 
 Whaley, 717
 
 S.W.2d at 32-33. It is of no consequence that the one paragraph came before or after the other.
 

 [15]
 

 . Appellant argues that he preserved this argument by objecting to the "and/or Sean Conrad” language in another portion of the charge. However, we find that objecting to certain language in one portion of a seventeen-page charge does not preserve an objection to different language in another portion of the charge.
 

 [16]
 

 . The First Court of Appeals has held that the presentment requirement can be met by presentment to the court coordinator.
 
 See Butler v. State,
 
 6 S.W.3d 636, 641 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd);
 
 see also Estrella v. State,
 
 82 S.W.3d 483, 485-86 (Tex.App.-San Antonio 2002, pet. dism’d) (following
 
 Butler).
 

 [17]
 

 . The docket statement in the present case indicates only that the motion was filed; whereas, in
 
 Daniels,
 
 the statement indicated the motion "was
 
 presented
 
 to the Court.” 63 S.W.3d at 69 (emphasis added). This is a key, indeed controlling, distinction between the two cases.
 

 [18]
 

 .It should be noted that this final docket entry was not signed by the judge, as other docket entries were, and the handwriting appears different from that in the passages signed by the judge. We cannot determine whether the judge himself made the entry.
 

 [19]
 

 . Although the
 
 Hawkins
 
 case involved prosecutor argument in the punishment phase, its general principles appear equally applicable to argument during the guilt/innocence phase.
 

 [20]
 

 . The jury charge also instructed the jury that it could not consider for any purpose appellant's decision not to testify.
 

 [21]
 

 . Appellant also references a subsequent comment by the prosecutor about hiding a witness, but this comment occurs three pages later in the record, and no objection was lodged against it. Accordingly, no argument regarding that statement was preserved for review.
 
 See
 
 Tex.R.App. P. 33.1(a);
 
 Mathis,
 
 67 S.W.3d at 926-27.
 

 [22]
 

 . A portion of defense counsel's statements reads as follows:
 

 [Tit’s the day before trial and you wonder how are we going to convince a jury Richard Longoria is guilty? We have no evidence. Let’s bring some people that will be intimidation [sic]. You want your government working for you. They subpoenaed his kids ... his ex-wife, his mother, his current wife all to the Grand Jury....
 

 [23]
 

 . Specifically, appellant references the following statements: “Before we had her in the Grand Jury, she came down with her lawyer and told us what happened. And, in fact, we took her in the Grand Jury to give her some coke [sic] so Longoria wouldn’t know she was cooperating with the detectives — .” Appellant objected, the court sustained the objection and instructed the jurors to disregard, but the court refused to declare a mistrial.