Affirmed and Opinion filed December 6, 2005









Affirmed and Opinion filed December 6, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01054-CR

____________

 

JERMAINE APPOLLO
THOMAS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court 

Harris County, Texas

Trial Court Cause No. 932,474

 



 

O P I N I O N

Appellant Jermaine Appollo Thomas appeals
his conviction for capital murder in the course of a robbery with a deadly
weapon.[1]  In his sole point of error, appellant argues
that the evidence is factually insufficient to support a conviction for capital
murder because it fails to prove that appellant intended the victim=s death.  We affirm.

Background

The victim in this case, Ifeanyi Udenenwu,
drove an ice cream truck in appellant=s
neighborhood.  Residents referred to him
as AMr. Berry@ or simply Athe ice cream man.@  In addition to ice cream, Mr. Berry sold
snack foods and convenience store items from his truck.  Mr. Berry was fatally shot during the course
of a robbery on December 2, 2002.  After
killing Mr. Berry, the robbers highjacked his truck, unloaded the merchandise,
and set the truck on fire with Mr. Berry=s body still
inside.

On the night of December 2, 2002,
appellant and three acquaintancesBCecil ABoo@ Henderson, Isiah ALucky@ Gooden, and
Tristan TerryBgathered at Henderson=s house.  Henderson=s girlfriend,
Laeshelia Coleman, was also present.  At
some point, the men began to discuss Ahitting a lick,@ meaning that they
planned to rob someone.  According to
Coleman, appellant declared that he knew a lick to hit and suggested that they
rob Mr. Berry because he sold dope and weed from his truck.  Coleman testified that appellant said that
they could rob Mr. Berry when he parked his truck for the night.  In contrast, appellant testified that the
robbery was not his idea and that he did not know who the others intended to
rob.

All four men displayed guns at Henderson=s house.  Appellant had brought his mother=s loaded gun,
which he claimed was for protection, and showed it to the others.[2]  Appellant testified, however, that he had
never held a gun before that night and that he would never shoot one.  Gooden, Terry, and Henderson also displayed
their guns, and Gooden declared that he felt like killing someone that night.  Appellant testified that he did not take
Gooden seriously.  According to
appellant, Gooden also took appellant=s mother=s gun away from
him.








After they decided to rob Mr. Berry,
Gooden, Terry, and Henderson left the house. 
Appellant agreed to pick them up in Gooden=s car if they ran
into trouble.[3]  Appellant testified that he knew that the
others were going to commit a robbery, but that he did not know who the target
would be.  However, on cross-examination,
appellant admitted that he knew the others planned to rob Mr. Berry.  After about thirty minutes, Gooden called
appellant and told him to pick them up. 
Appellant first went home and changed into all-black clothing, including
a hooded sweat-shirt, a knit cap, a do-rag, a headband, and gloves.  Appellant testified that he changed his
clothes because he was cold.  After
changing, appellant met Gooden, Terry, and Henderson at the corner where the
ice cream truck was parked. 

Appellant testified that he arrived just
in time to see Gooden shooting into the window of the ice cream truck.  Neighbor Natalie Reyes testified that she saw
three or four young black men standing around the truck moments before the
shooting.  Appellant testified that he
did not get out of Gooden=s car; however, Reyes testified that
shortly before the shooting, she saw an old blue car parked nearby and that
appellant was buying something at the ice cream truck=s window.  Both appellant and Reyes testified that three
of the men jumped inside the truck.  The
three men drove away in the ice cream truck, and appellant followed in Gooden=s car.  Appellant testified that he followed them
because he wanted to get his mother=s gun back.[4]








The vehicles eventually arrived at
Industrial Park.  Appellant testified
that when he got out of the car, he saw the others throwing various items out
of the ice cream truck.   Appellant
testified that he asked for his mother=s gun but did not
get it back.  When appellant asked about
Mr. Berry, Gooden gloated that he had killed him.  Appellant testified that he did not believe
Gooden until he looked through the truck=s window and saw
Mr. Berry=s body. 
Appellant testified that he was scared and ran to his friend Dirty John=s house, that he
did not see any gasoline cans, and that the ice cream truck was not on fire
when he fled.  A security guard testified
that a young black man ran out of the park shortly before the truck exploded;
after the explosion, the guard also saw three men pushing a blue car out of the
park.

When appellant arrived at Dirty John=s house, he jumped
into the back seat of a car and hid. 
Later, he shed the heavy black clothing and left it on Dirty John=s porch.  Appellant testified that he took his clothes
off because he was sweaty after running from Industrial Park.  Gooden, Terry, and Henderson also arrived at
Dirty John=s house.[5]  They had been pushing Gooden=s car because it
had run out of gas; the car was also filled to the roof with items from the ice
cream truck.  Dirty John testified that
the men wanted him to fill the car with gas from his father=s truck.  According to Dirty John, Gooden urged him to
work quickly because he had just robbed and killed someone.  Dirty John did not see appellant with any
money from the robbery and did not ask whether the others had given appellant a
share of the cash.  Appellant testified
that he did not receive any money or property from the ice cream truck.[6]









Once they had refueled the car, appellant
and the others drove back to Henderson=s house.  Coleman was still there when they arrived,
and appellant told her that Gooden had shot the ice cream man.   Coleman testified that all four men unloaded
the stolen goods from the car and stashed them in the house.  Several days later, police found appellant=s mother=s gun at Gooden=s girlfriend=s house; the shots
that killed Mr. Berry came from appellant=s mother=s gun.

Factual Sufficiency

In his sole point of error, appellant
argues that the evidence is factually insufficient to support his
conviction.  Specifically, appellant
contends that even if the evidence preponderates towards his guilt, it does not
prove his guilt beyond a reasonable doubt. 
We disagree.

In a factual sufficiency review, an appellate court must view
all the evidence in a neutral light and determine whether the jury was
rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  Evidence is
factually insufficient if, when considered by itself, the evidence supporting
the verdict is too weak to support a finding of guilt beyond a reasonable doubt
and thus renders the conviction clearly wrong and manifestly unjust.  Id. at 85; Vasquez v. State,
67 S.W.3d 229, 236 (Tex. Crim. App. 2002). 
Alternatively, evidence is factually insufficient if the evidence
contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard cannot be met, even if evidence supporting guilt outweighs the
evidence to the contrary.  Zuniga,
144 S.W.3d at 484.  The reviewing
court may not substitute its own judgment for that of the jury and may not
intrude upon the jury=s role as the sole judge of the weight and
credibility of witness testimony.  Vasquez, 67 S.W.3d at 236.

Appellant was convicted of capital murder
in the course of a robbery with a deadly weapon.  A person commits capital murder if he
intentionally commits murder in the course of committing or attempting to
commit robbery.  Tex. Pen. Code Ann. ' 19.03(a)(2)
(Vernon Supp. 2005).  A person commits
robbery if he unlawfully appropriates property with intent to deprive the owner
of property and in the course of doing so, he intentionally, knowingly, or
recklessly causes bodily injury to another. 
Tex. Pen. Code Ann. ' 29.02(a)(1)
(Vernon 2003), '31.03(a) (Vernon Supp. 2005).








The jury instructions authorized the jury
to convict appellant of capital murder as a party to the offense.  A person is criminally responsible as a party
if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or by both. 
Tex. Pen. Code Ann. ' 7.01(a) (Vernon
2003).  A person is criminally
responsible for the conduct of another if he Asolicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense@ and acts Awith intent to
promote or assist the commission of the offense.@  Tex.
Pen. Code Ann. ' 7.02(a)(2) (Vernon 2003). 

The jury instructions also authorized the
jury to convict appellant as a conspirator. 
A person can be convicted of capital murder as a conspiring party under
Texas Penal Code Section 7.02(b).  Longoria
v. State, 154 S.W.3d 747, 754 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Section 7.02(b)
states that if a conspirator commits a felony in the attempt to carry out a
conspiracy to commit a different felony, each conspirator is guilty of the
felony actually committed as long as Athe offense was
committed in furtherance of the unlawful purpose and was one that should have
been anticipated as a result of carrying out the conspiracy.@  Tex.
Pen. Code Ann. ' 7.02(b) (Vernon 2003).  This is true even if the conspirators did not
intend to commit the felony that their co-conspirator actually committed.  Id.  
Therefore, appellant could be held criminally responsible for capital
murder if the evidence demonstrated that he conspired with Gooden, Terry, and
Henderson to commit a robbery, that one of those men committed capital murder
in furtherance of the conspiracy=s unlawful
purpose, and that appellant should have anticipated that the murder would
occur.  See Longoria, 154 S.W.3d
at 758-59. 

Appellant acknowledges that he knew the
others were going to commit a robbery and that his role was to drive the
get-away car; however, appellant insists that he neither expected nor
participated in the murder of Mr. Berry. 
Therefore, we must determine whether the evidence is factually
sufficient to support the following conclusions: (1) the capital murder of Mr.
Berry was in furtherance of the conspiracy to commit robbery, and (2) appellant
should have anticipated that Mr. Berry would be killed.








We find that the evidence is factually
sufficient to support appellant=s conviction for
capital murder.  The record indicates
that Gooden shot Mr. Berry after appellant had arrived in the get-away car as
instructed.  Immediately after the
shooting, Gooden, Terry, and Henderson climbed into the ice cream truck and
drove away, followed by appellant.  At
Industrial Park, three of the men unloaded the truck=s merchandise into
the get-away car, and then set the ice-cream truck on fire with Mr. Berry=s body still
inside.  Afterwards, all four men helped
to stash the stolen items at Gooden=s house.  We find that these facts are sufficient to
prove that the murder of Mr. Berry was in furtherance of the men=s conspiracy to
commit robbery.  See Johnson v. State,
32 S.W.3d 388, 394 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (holding that evidence was factually sufficient to prove
that conspirators committed acts in furtherance of conspiracy to commit robbery
when one conspirator shot victim during the robbery, other conspirators
ransacked the house, and all conspirators helped to unload stolen property).








We also find that appellant should have
anticipated that Mr. Berry would be killed during the course of the
robbery.  Texas courts consistently have
held that a conspirator should have anticipated that a murder would occur when
he knew that a co-conspirator was carrying a gun.  See, e.g., Longoria,
154 S.W.3d at 756-57 (holding that appellant, who watched for police while
armed co-conspirators robbed a house and shot at sheriff=s deputies, should
have anticipated that a deputy could die); Flores v. State, 681 S.W.2d
94, 96 (Tex. App.CHouston [14th Dist.] 1984, pet. granted)
(holding that appellant in burglary case should have anticipated murder because
he knew that his co-conspirator had a gun); Ramirez v. State, No.
14-02-00321-CR, 2003 WL 548600, at *4 (Tex. App.CHouston [14th
Dist.] Feb. 27, 2003, pet. ref=d) (not designated
for publication) (holding that appellant should have anticipated that victim
would be killed when co-conspirator brought a gun to the scene of the
robbery).  Here, all four men displayed
guns at Gooden=s house while they planned the robbery,
and all but appellant took guns with them when they left to find the ice cream
truck.  Furthermore, in appellant=s presence, Gooden
declared that he felt like killing someone that night and took appellant=s mother=s loaded gun,
which he used to shoot Mr. Berry less than an hour later.  These facts clearly demonstrate that
appellant should have anticipated that a murder would during the course of the
robbery.   

Appellant argues that he could not have
anticipated that Mr. Berry would die because he had planned the robbery in such
a way that no one would need to be killed and because Gooden shot Mr. Berry in
the presence of several witnesses.[7]  However, as the judge of the weight and
credibility of witness testimony, the jury was free to disbelieve appellant=s assertions, and
we will not second-guess their decisions about such matters.  Vasquez, 67 S.W.3d at 236.  Having viewed
all of the evidence in a neutral light, we find that the evidence does not
merely preponderate toward appellant=s guilt; rather, a reasonable jury
could have found appellant guilty beyond a reasonable doubt.  Because we find that the evidence is
factually sufficient to support appellant=s conviction for capital murder, we
overrule appellant=s sole point of error and affirm the judgment of the trial
court.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment
rendered and Opinion filed December 6, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  A jury found
appellant guilty and a judge sentenced him to life in prison.





[2]  Coleman
testified that appellant left and returned with the gun after the men discussed
robbing Mr. Berry.  However, the evidence
is clear that appellant displayed his mother=s gun at
Henderson=s house before the robbery occurred.





[3]  The record
indicates that Gooden drove an early-model dark blue or black Oldsmobile.





[4]  The record suggests that at some
point, the men discussed throwing Mr. Berry onto the freeway, although it is
unclear whether this conversation took place before or after the robbery and
shooting occurred.  On direct examination,
appellant denied that such a conversation had taken place, but he admitted it
on cross-examination.  





[5]  It is unclear
whether appellant arrived at Dirty John=s with
the other three men.  Although appellant
testified that he fled Industrial Park while Gooden, Terry, and Henderson were
still there, Dirty John thought that appellant had arrived in the blue car with
the others.  There was also evidence that
shortly after they left Industrial Park, the men scattered and hid in various
places near Dirty John=s house while a police helicopter scanned the area.





[6]  John Robinson,
Dirty John=s father, saw Henderson remove a plastic bag from
under the porch before the group left. 
Robinson testified that he thought that appellant and the others had
recently committed a crime when they suddenly arrived at his house; when he
heard about the incident on the news the next morning, he called Crime
Stoppers.  Robinson and Dirty John each
received $2,000 from Crime Stoppers.





[7]  Appellant
argues that because the group planned to steal illegal drugs, Mr. Berry would
not be able to report the crime; therefore, they would not need to kill Mr.
Berry to ensure that he would not incriminate them.  Contradictorily, appellant also claims that
he stayed out of Mr. Berry=s view because Mr. Berry  would recognize him and report him to the
authorities; appellant argues that his avoidance of Mr. Berry proves that he
expected Mr. Berry to remain alive.