Affirmed and Opinion filed April 24, 2007









Affirmed and Opinion filed April 24, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01145-CR

_______________

 

JAMES KEVIN YOST, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                            


On Appeal from the 23rd District Court 

Brazoria County, Texas

Trial Court Cause No. 46412 

                                                                                                                                          


 

O
P I N I O N








Appellant James Kevin Yost was convicted of the murder of his
twelve-year-old stepdaughter.  On appeal,
he contends that the jury improperly considered the testimony of his common-law
wife, Bridget Farmer, who pleaded guilty to the offense of injury to a
child.  Appellant argues that his wife is
an accomplice, that her testimony is uncorroborated, and that the evidence
would have been legally insufficient to support his conviction if his wife=s testimony had been properly
excluded under the accomplice-witness rule. 
In two additional issues, he challenges the factual sufficiency of the
evidence and the lack of jury unanimity on his state of mind.  

We conclude appellant=s wife is not an accomplice as a
matter of law, and her testimony was corroborated.  Therefore, even if the jury determined that
Bridget Farmer was appellant=s accomplice as a matter of fact, it could properly consider
her testimony.  We further conclude that
the evidence is factually sufficient to support the conviction, and that a
general verdict was appropriate.  We
therefore affirm.

I. 
Factual and Procedural Background

At about 3:00 a.m. on December 29, 2003, police and emergency
medical personnel arrived at appellant=s residence in response to a 911 call
for assistance with a sick child.  At the
home, they discovered twelve-year-old Anna Farmer=s body on the floor by her bed.  Her body was cold, and rigor mortis had
already begun to set in.  Bridget Farmer,
Anna=s mother and appellant=s common-law wife, testified to the
events leading up to Anna=s death. 








According to Bridget, appellant had a history of isolating
and abusing Anna.  He kept Anna locked in
her bedroom, and she was not allowed to speak to her siblings.  He even forbade Anna=s mother from speaking to her.  At appellant=s orders, Anna did not attend school,
but spent her days accompanying him to his work tending a booth at a flea
market or copying verses from the Bible. 
At times appellant would not allow her to use the restroom, telling her
to use her bedroom instead.  According to
Bridget, appellant punished Anna by forcing her to take cold showers or beating
her.  In one such episode, he paddled her
with a board so hard that Anna=s skin split and bled. 
In another instance, he struck Anna=s head with such force that she had
swelling and black eyes for over a week. 
After both of these incidents, appellant told Bridget that he had lost
his temper because Anna Afought@ him.  Bridget further
testified that appellant would not allow her to seek medical treatment for Anna
after these beatings.  Moreover, she
stated, appellant threatened to kill Anna if Bridget left him.    

Bridget also supplied all of the testimony regarding events
that occurred on December 28 and the early hours of December 29, 2003.  According to Bridget, Anna accompanied
appellant to his booth on the morning of December 28.  Sometime around midday, appellant called
Bridget and told her to come to the flea market so he could go to another booth
to pay rent.  Bridget stayed with Anna
while appellant paid the rent, and when he returned, Bridget took Anna to the
restroom.  Anna complained that her
stomach hurt, and Bridget took Anna home and sent her to her room.  Bridget testified that a short while later,
she checked on Anna, and Anna said that she had thrown up, but had cleaned it
up.  Bridget testified that she gave Anna
some juice and told her to lie down.    

According to Bridget, 
appellant arrived home at approximately 5:00 p.m., turned on the heater,
and went into Anna=s room.  Although the
air conditioning and heating unit muffled the sound, Bridget heard three bumps
against Anna=s wall, and heard Anna say, AOuch.@ 
Bridget testified that a short time later, appellant came out of Anna=s room looking scared and told
Bridget that Anna was not breathing. 
According to Bridget, A[appellant said] it wasn=t something he just did.  It must have been something he did the day
before.@ 









Bridget said she attempted CPR, but was unsuccessful.  She further testified that appellant asked
her to help him dispose of Anna=s body, but she refused. 
According to Bridget, she told appellant she wanted to call 911, but
appellant did not allow her to do so, and told her that if she did call, they
would both go to prison.  Bridget
testified that appellant then gathered some of his belongings, the title to his
truck, the telephones, the fax receiver, and the keys to both vehicles.  He instructed Bridget to wait until the next
day before calling 911 to give him a Ahead start,@ and left at around 9:00 p.m.  Several hours later, Bridget found an old
phone, called her aunt, and left a message for her mother.  After her mother returned her call, Bridget
finally called 911.  It was then
approximately 3:00 a.m. on December 29, 2003. 
According to Bridget=s testimony,  Anna had
been dead approximately eight hours by the time police and other emergency
personnel arrived.  

At appellant=s trial, Texas Ranger Richard Shing testified that appellant
was apprehended at a Dallas motel on January 1, 2004.  Evidence collected from the motel showed that
appellant had registered using a false name and address on December 30,
2003.  Shing testified that there
was  a Afor sale@ sign on appellant=s truck in the motel parking lot. 

Appellant was returned to Brazoria County and charged with murder;[1]
Bridget was charged with two counts of injury to a child by failing to provide
Anna with proper nourishment and medical care. 
As part of a plea agreement, Bridget pleaded guilty to both counts,
received ten years of probation for each count, and agreed to relinquish her
parental rights to her three remaining children.  She also agreed to testify against appellant.








Like Bridget, Anna=s younger half-sister P.W. testified
that appellant routinely isolated Anna from the rest of the family.  According to P.W., appellant kept Anna locked
in her bedroom while Bridget, P.W., and appellant=s two small children slept in the
living room of the trailer.  While the
rest of the family ate together, appellant forced Anna to eat standing at the
counter.  She was allowed only five
minutes to eat, and when at home, she was usually allowed to eat only sardines,
beets, and kidney beans.  P.W. further
testified that sometimes when appellant and Anna were in Anna=s bedroom, she heard banging sounds
coming from the room.  P.W. related that
she heard appellant tell Bridget weekly or even daily that he would kill Anna
someday.  P.W. also described how
appellant forced Anna to copy Bible verses all day, and testified that he
monitored Anna on a surveillance camera installed in her bedroom.  According to P.W., appellant frequently
referred to Anna using various slurs, 
calling her a Awetback@ and a Abitch.@  P.W. testified that
appellant let Anna sit at the table at Christmas that year, but because P.W.
left to visit her biological father on December 26, she could not testify to
events after that time.

Medical examiner Stephen Pustilnik testified that, at the
time of her death, Anna was underweight, extremely malnourished, and
chronically dehydrated.  He also
testified at length regarding Anna=s many internal and external
injuries, bruises, and scars, and pointed out the symptoms and effects of Anna=s prolonged starvation.  He opined that chronic child abuse was a
contributing cause of her death.  Dr.
Pustilnik identified large scars on Anna=s buttocks as the result of repeated
abusive paddling, and explained that head injuries Anna received more than
forty-eight hours before her death had made her scalp soft and spongy from the
accumulation of blood in the tissue.  He
further testified that Anna had blood in her vaginal vault and in the
surrounding tissue, including hemorrhaging to her rectal vaginal septum.  According to Dr. Pustilnik, these injuries
were caused by a blunt object penetrating Anna=s vagina or rectum with such force
that tissues in these areas and in the area around Anna=s bladder hemorrhaged.  Dr. Pustilnik thought it likely that these
injuries occurred less than an hour before Anna=s death, but they could have occurred
as long as forty-eight hours before her death. 









Finally, Dr. Pustilnik testified that Anna=s death was caused by multiple blunt
force trauma to her abdominal area.  More
specifically, he testified that separate blows to her upper abdomen, delivered
during the same beating, lacerated her liver and ruptured her duodenum.  Although each of these injuries was
independently capable of causing death, neither caused death immediately.  According to Dr. Pustilnik, Anna did not die
from either of these injuries for several hours, and possibly as many as
forty-eight hours.  During this time, a
large amount of blood and fluid accumulated in the soft tissues and cavity of
Anna=s abdomen.  These injuries and their effects could in
turn produce stomach pain, nausea, and vomiting, and eventually produced the
shock, hypotension, and/or sepsis that was the mechanism by which death
occurred.[2]  According to Dr. Pustilnik, there was a
chance that Anna might have survived if she had received immediate medical
attention.   

Aside from Bridget=s testimony indicating that Anna died
shortly after 5:00 p.m. on December 28, 2003, the evidence does not pinpoint
the exact time of Anna=s death.  Anna=s death certificate does not even
list the date of her death; rather, it reports that her body was Afound@ at 3:00 a.m. on December 29, 2003.[3]  The evidence is undisputed that when
emergency personnel and police arrived at approximately 3:30 a.m. on December
29, Anna=s body was already cold, and rigor
mortis had set in.  Appellant also
offered the testimony of one of the responding paramedics that blood had begun
to pool on the back of Anna=s body.  No witnesses
testified regarding the amount of time that likely elapsed between Anna=s death and this degree of rigor
mortis or blood pooling.   

After hearing the evidence, a jury found appellant guilty of
murder and sentenced him to life in prison. 
This appeal timely followed.

II.  Issues Presented








Appellant presents three issues for
review.  In his first issue, he contends
that Bridget presented uncorroborated accomplice-witness testimony, and that
after excluding this testimony, the remaining evidence is legally insufficient
to support his conviction.  In his second
issue, appellant asserts that the evidence is factually insufficient to support
his conviction.  Appellant contends in
his third issue that the trial court erred in submitting a jury charge which
did not require unanimity regarding whether he (a) intentionally and knowingly
caused Anna=s death or (b) intended to cause Anna
serious bodily injury and caused her death by committing an act clearly
dangerous to human life.

III. 
Analysis

A.        The
Accomplice-Witness Rule

Because appellant=s first two issues rely on the
application of the accomplice-witness rule, we begin by reviewing the governing
law regarding accomplice testimony.

An accomplice is an individual who participates with a
defendant before, during, or after the crime and acts with the requisite
culpable mental state.  Cocke v. State,
201 S.W.3d 744, 748 (Tex. Crim. App. 2006). 
Thus, a witness is an accomplice to the crime for which the defendant is
on trial if there is sufficient evidence in the record to charge the witness
with the same or a lesser-included offense. 
Blake v. State, 971 S.W.2d 451, 454B55 (Tex. Crim. App. 1998) (en
banc).  Whether the witness is actually
charged with such an offense is irrelevant. 
Id.  If there is no doubt
or the evidence clearly shows that the witness is an accomplice as a matter of
law, then the court must instruct to jury to disregard the witness=s testimony unless other evidence
tends to connect the defendant to the crime. 
See Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2006); Blake, 971 S.W.2d at 455.  But if the evidence as to a witness=s status as an accomplice is
conflicting, the jury should determine the witness=s status under instructions defining
an Aaccomplice.@ 
Blake, 971 S.W.2d at 455. 








The determination that a witness is an accomplice has
important implications.  Under the
accomplice-witness rule, a defendant cannot be convicted based on the testimony
of an accomplice unless the testimony is corroborated by other evidence tending
to connect the defendant with the offense committed.  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2006).  Although appellant casts his challenges to
the evidence under general legal and factual sufficiency standards, a challenge
of insufficient corroboration is not the same as a challenge of insufficient
evidence to support the verdict, but is instead governed by a different
test.  Cathey v. State, 992 S.W.2d
460, 462B63 (Tex. Crim. App. 1999) (en
banc);  Torres v. State, 137
S.W.3d 191, 196 (Tex. App.CHouston [1st Dist.] 2004, no pet.) (citing Cantelon v.
State, 85 S.W.3d 457, 460 (Tex. App.CAustin 2002, no pet.)).  

To determine whether sufficient corroboration exists, we
first eliminate the accomplice witness=s testimony from consideration and
then determine whether any of the remaining evidence tends to connect the
accused with the commission of the crime. 
Longoria v. State, 154 S.W.3d 747, 758 (Tex. App.CHouston [14th Dist.]  2004, pet. ref=d). 
The corroborating evidence need not be sufficient in itself to establish
guilt, nor must it directly link the accused to the commission of the
offense.  Id.  Rather, the accomplice-witness rule is
satisfied if there is some non‑accomplice evidence that tends to connect
the accused to the commission of the offense alleged in the indictment.  Id.   








In analyzing a challenge to the sufficiency of corroborative
evidence, courts view the evidence in the light most favorable to the jury=s verdict and determine whether a
reasonable jury could conclude that the non-accomplice evidence, taken as a
whole, tends to connect the appellant to the offense.  Gill v. State, 873 S.W.2d 45, 48 (Tex.
Crim. App. 1994) (en banc).  Taken in
isolation, suspicious circumstances such as the accused=s presence at the scene of the crime,
motive, or opportunity to commit the crime are not by themselves sufficient to
corroborate the testimony of an accomplice witness.  See id. at 49; Jeffery v. State,
169 S.W.3d 439, 447 (Tex. App.CTexarkana 2005, pet. ref=d). 
But cumulative suspicious circumstances may tend to connect the accused
to the charged offense, even if none of the circumstances is individually
sufficient to do so.  Gill, 873
S.W.2d at 49.  Viewed collectively, even
otherwise insignificant incriminating circumstances may tend to connect a
defendant to a crime he is accused of committing.  Dowthitt v. State, 931 S.W.2d 244, 249
(Tex. Crim. App. 1996).  Accordingly, we
look to all of the facts and circumstances in evidence to supply the necessary
corroboration.  Moore v. State,
700 S.W.2d 193, 203 (Tex. Crim. App. 1985) (en banc).  We then examine Athe combined and cumulative weight of
the evidence@ in determining whether the
accomplice testimony was corroborated.  Cox
v. State, 830 S.W.2d 609, 611B12 (Tex. Crim. App. 1992) (en banc).

Appellant relies on this test to argue that he should be
acquitted because Bridget is an accomplice and there is insufficient
corroborating evidence to support her testimony.  However, before we may apply this test, we
must first determine whether Bridget is an accomplice. 

B.        Complicity as
a Matter of Law    

In arguing that Bridget is an accomplice, appellant relies
solely on the undisputed fact that she pleaded guilty to the offense of injury
to a child.  Citing this court=s decision in Paz v. State,[4]
appellant contends that injury to a child is a lesser-included offense to the
crime of murder.  Thus, he asserts that
Bridget is an accomplice as a matter of law.








But appellant=s reliance on Paz is misplaced.  In Paz, we addressed the question of
whether a defendant charged with capital murder for intentionally or knowingly
causing the death of child under the age of six should have received a jury
instruction on the lesser-included offense of injury to a child.  Injury to a child can be a lesser-included
offense of capital murder when certain other conditions are met; this
occurs, as in Paz, when the victim is under the age of six.  Compare Tex. Penal Code ANN. '' 19.03(a)(8) (making murder of a person under the age of
six a capital offense) with id. ' 22.04(c)(1) (defining a child, as
used in the offense of Ainjury to a child,@ as a person under age fourteen)
(Vernon 2006). Here, however, appellant was charged with and convicted of  murder, not capital murder.  Injury to a child is not a lesser-included offense
of murder.  Ex parte Easter, 615
S.W.2d 719, 721 (Tex. Crim. App. 1981) (en banc); Florio v. State, 814
S.W.2d 778, 783 (Tex. App.CHouston [14th Dist.] 1991), aff=d on other grounds, 845 S.W.2d 849 (Tex. Crim. App.
1992) (en banc).  We must therefore
reject appellant=s argument that, because Bridget admits her guilt for the
offense of injury to a child, she is an accomplice as a matter of law. 

C.        Complicity as
a Matter of Fact

Appellant also suggests that, in addition to being an
accomplice as a matter of law because she pleaded guilty to the offense of
injury to a child, Bridget is also an accomplice as a matter of fact.  This issue was submitted to the jury by the
following instructions:

Upon the law of accomplice witness testimony, you are
instructed that a person, who has participated with someone else before, during
or after the commission of a crime, is an accomplice witness.  In such a case, there must be some evidence
of an affirmative act on the witness=s part,
to assist in commission of the offense. 
If the witness cannot be prosecuted for the offense with which the
accused is charged, then the witness is not an accomplice as a matter of
law.  A witness is not an accomplice
witness merely because he or she knew of the offense and did not disclose it,
or even concealed it.  The witness=s presence at the scene of the crime does not render
that witness an accomplice witness.

Now, if you find from the evidence
that Bridget Farmer was an accomplice, then you are further instructed that you
cannot convict the defendant upon Bridget Farmer=s testimony, unless you first believe
her testimony is true and shows the guilt of the defendant as charged in the
indictment, and then you cannot convict the defendant unless Bridget Farmer=s testimony is corroborated by other
evidence tending to connect the defendant with the offense charged.  The corroboration is not sufficient if it
merely shows the commission of an offense, but it must tend to connect the
defendant with its commission, and then from all the evidence, you must believe
beyond a reasonable doubt with [sic] the defendant is guilty of the offense
charged against him, or if you have reasonable doubt thereof, you will acquit
the defendant. 








Therefore, the jury could have arrived at its guilty verdict by finding
that  (1) Bridget was not an accomplice
as a matter of fact, and the evidence, including her testimony, established
appellant=s guilt; (2) Bridget was an
accomplice and her testimony was both true and corroborated by other evidence
tending to connect appellant to the offense; or (3) Bridget was an accomplice,
and although her testimony was not both true and corroborated, the remaining
evidence established appellant=s guilt.  

From this record, we cannot say what path led the jury to
convict appellant, but we will not reverse the judgment if any one of these
paths is supported by the record.  We
note first that, despite his insistence that Bridget is an accomplice as a
matter of law, appellant does not contend that the trial court erred in
charging the jury to determine whether Bridget was an accomplice as a matter of
fact.  Moreover, we cannot agree with
appellant=s implication that it would have been
error for the jury to determine that Bridget was not an accomplice.  See Blake, 971 S.W.2d at 455 (AIf the evidence is conflicting, it is
proper to leave the question of whether an inculpatory witness is an accomplice
witness as a matter of fact to the jury under instructions defining the term
accomplice.@). 
For example, a reasonable jury could have found that Bridget did not
participate in Anna=s murder, or did not do so with the required intent.  See Cocke, 201 S.W.3d at 748 (defining
an accomplice as Aan individual who participates with a defendant before,
during, or after the commission of the crime and acts with the requisite
culpable mental state.@); Jarnigan v. State, 57 S.W.3d 76, 87 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (stating that Athe jury can infer knowledge and
intent from . . . acts, words, and conduct . . . .@).[5]
 Thus, the jury could have concluded that
Bridget is not appellant=s accomplice and considered her testimony without regard to
whether it was corroborated.  








Even if one assumes that the jury found Bridget to be an
accomplice, her testimony is amply corroborated.  P.W. testified that appellant threatened to
kill Anna weekly or even daily.  This
evidence supports an inference that appellant intended to kill Anna.  See Ross v. State, 133 S.W.3d 618, 621
(Tex. Crim. App. 2004) (considering evidence that the appellant threatened a
person as evidence of his intent to murder that person).  Anna=s body was subsequently found in appellant=s trailer in the same room where,
according to P.W., appellant kept Anna locked up.  P.W. also testified that she had previously
heard banging noises from that room when appellant was in the room with Anna,
and the medical examiner reported forensic signs that Anna had been repeatedly
beaten.  This evidence, when considered
with the additional evidence discussed in this section, supports an inference
that appellant had previously performed the same wrongful conduct (beating Anna
with an unknown object) in the same location where Anna=s body was later found.  These circumstances tend to connect appellant
to her murder.  See Rogers v. State,
183 S.W.3d 853, 864 (Tex. App.CTyler 2005, no pet.) (AIn a prosecution for murder, evidence of prior assaults on
and threats toward the victim by the defendant is relevant to show the defendant=s previous relationship with the
victim as well as the defendant=s state of mind at the time of the offense.@).  









The evidence also placed appellant at the scene at or near
the time Anna was fatally injured.  For
example, appellant=s witnesses agreed that Anna had been dead for some time
before emergency personnel arrived at appellant=s residence at approximately 3:30
a.m. on December 29, 2003.  By this time,
her body was cold, blood had begun pooling on the side of her body closest to
the ground, and rigor mortis had set in. 
Based on this evidence, a reasonable jury could infer that Anna died on
December 28, 2003.  In addition, the
medical examiner testified that Anna died as a result of blows she received as
many as forty-eight hours before her death. 
A reasonable jury could find, based on this evidence, that Anna was
fatally injured as early as December 26, 2003. 
This is the same day that P.W. left appellant=s residence to visit her biological
father.  According to P.W., appellant and
Anna were both at the residence before she left.  Consequently, this evidence, considered in
conjunction with the other suspicious circumstances, tends to connect appellant
to Anna=s murder.  See Brown v. State, 672 S.W.2d 487,
489 (Tex. Crim. App. 1984) (en banc) (holding that, when combined with other
suspicious circumstances, evidence of an appellant=s presence at the crime scene near
the time of the offense can corroborate accomplice testimony).

The evidence also shows that the day after Anna=s death was reported, appellant
checked into a motel hundreds of miles away using a false name and
address.  Evidence of flight and using a
false identity to rent a motel room each reflect an appellant=s consciousness of guilt for the
charged offense.  See Bigby v. State,
892 S.W.2d 864, 884 (Tex. Crim. App. 1994) (en banc) (stating that evidence of
flight Ashows a consciousness of guilt of the
crime for which the defendant is on trial.@); Robinson v. State, No.
01-05-00622-CR, 2007 WL 491181, at *6B7 (Tex. App.CHouston [1st Dist.] Feb. 15, 2007, no
pet. h.) (discussing flight and use of an assumed name).  Here, the evidence supports an inference that
appellant fled the area and concealed his identity after Anna=s death in an attempt to avoid
arrest.  

Viewing all of the foregoing evidence in the light most
favorable to the jury=s verdict, we conclude that a reasonable jury, if required to
do so, could find that the cumulative effect of the non-accomplice evidence
tends to connect appellant to Anna=s murder.  We therefore overrule appellant=s first issue.

D.        Factual Sufficiency








In his second issue, appellant
challenges the factual sufficiency of the evidence to support his
conviction.  When reviewing the factual sufficiency of the evidence, we view all
the evidence in a neutral light and set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@ 
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en
banc) (quoting Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996) (en banc)).  Before we may reverse
for factual insufficiency, we must first be able to say, with some objective
basis in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). When reviewing the
evidence, we must avoid intruding on the factfinder=s role as the sole judge of the
weight and credibility of the witness testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000) (en banc).  We do not
re-evaluate the credibility of witnesses or the weight of evidence, and will
not substitute our judgment for that of the factfinder.  Johnson v. State, 967 S.W.2d 410, 412
(Tex. Crim. App. 1998).

Appellant primarily argues that the evidence is factually
insufficient if Bridget Farmer=s testimony is excluded; however, for the reasons discussed
above, the jury was entitled to consider her testimony.  He next contends that the jurors= deliberations were so clouded with
emotion that they failed to consider all the evidence, but cites no evidence
that the jury neglected to consider.  

Appellant also argues that no witnesses from the flea market
or the neighborhood testified to seeing Anna with him.  Because no such evidence was required, its
absence does not undermine the verdict. 
Referring to P.W., appellant complains that some of the evidence
consisted of testimony provided by an eleven-year-old child regarding events
that occurred when she was nine; he also asserts that Bridget had an incentive
to lie.  But appellant does not argue
that P.W. and Bridget were not competent to testify, or that the jury was
unaware of P.W.=s age or Bridget=s possible motivations.  We will not reevaluate the jury=s credibility determinations. 








Appellant also refers to P.W.=s testimony that Bridget Asmacked@ Anna Akind of not hard, but kind of hard@ as evidence contrary to the
verdict.  This testimony is taken out of
context, and is not inconsistent with the verdict.  In fact, P.W. testified that Bridget Aonly smacked Anna a couple of times@ but A[appellant] would say she wouldn=t do it hard enough.@ 
Similarly, appellant refers to evidence that Bridget delayed calling 911
and initially lied to first responders regarding the time she discovered Anna=s death, but ignores Bridget=s testimony that she did so at
appellant=s request to give him a Ahead start@ in avoiding arrest.              Appellant
next contends that the testimony of his former brother-in-law, William Cowley,
is contrary to the verdict.  Cowley
testified that in August 2002, he observed Bridget, Anna, and P.W. at a family
barbeque.  According to Cowley, he asked
the two girls if they wanted more food, and when they said they did, Bridget Aslapped both of them upside the head
at the same time and told them, no, they didn=t need anything more to eat.@ 
At most, this testimony demonstrates that, when not acting under
appellant=s direction,  Bridget treated both daughters equally, if
badly; in contrast, the cumulative and uncontroverted evidence presented at
trial by Bridget, P.W., and the medical examiner establishes that Anna was
subsequently singled out for horrific abuse. 
Although Cowley=s observation may support an inference that Bridget was a
poor parent, this fact is not in dispute: Bridget admitted as much by pleading
guilty to two counts of injury to a child. 
Moreover, Cowley=s testimony is not inconsistent with a jury finding that,
seventeen months after this incident, Bridget=s husband murdered Anna.  








Having reviewed the record in a neutral light, we conclude
the evidence is factually sufficient to support the verdict.  P.W.=s testimony places appellant and Anna
at the location where her body was found, at or near the time that Anna=s fatal wounds were inflicted.  P.W.=s additional testimony that appellant
frequently threatened to kill Anna is evidence of his intent to murder
her.  Additionally, appellant wrote the
trial court a letter in which he described Anna=s death as Aan accident,@ thereby implying that he had
knowledge of the events surrounding Anna=s death.[6]  This evidence is consistent with even
stronger evidence found in Bridget=s testimony.  According to Bridget, appellant told her
immediately after Anna=s death that A[i]t must have been something he did the day before.@ 
Finally, the jury=s verdict is further supported by Bridget=s testimony and corroborative
testimony, both of which we have already described in some detail.

Although proof of motive or of a request for forgiveness is
not required, these are also significant circumstances indicating guilt.  See Guevara v. State, 152 S.W.3d 45,
50 (Tex. Crim. App. 2004) (AMotive is a significant circumstance indicating guilt.  Intent may also be inferred from
circumstantial evidence such as acts, words, and the conduct of the appellant.@) 
Such additional evidence can be found in a letter that appellant wrote
to Bridget from jail less than three weeks after his arrest.  In this letter, appellant wrote, ANow please, I beg of you, cry, yell, scream,
pray.  Do whatever it takes to get the
unforgiveness out of your heart. 
Unforgiveness can only cause disaster and death.@ 
He also wrote that Anna Ain her right mind, befor[e] the devil started
tormenting her and I, would not want things the way they now are.@ 
Appellant continued: 

The devil just deceived us little
[by] little until now Anna is gone. . . . [God] wants to
heal your heart and help you deal with the pain & sorrow.  But you must forgive
first. . . . I always thought that if something ever
happened I could count on my wife to search her heart and tell truthfully how
things where [sic].  That=s why I always wanted you as a
witness.  Now your [sic] trying to cover
this up and make me out to be a monster. . . . We were not
bad parents.  Just frustrated, confused,
and deceived by Satan. . . . Please (Perdo´ name) (Forgive
me) Judy, Mammaw, Kari,[7]
and Anna.  I am sorry for everything [.]
Please forgive me[.]@ 

Viewing the evidence in a neutral light, we conclude that the
jury=s verdict is not contrary to the
great weight of the evidence, and we overrule appellant=s second issue.








E.        Jury Unanimity

In his third issue, appellant
contends the trial court erroneously failed to require jury unanimity.  In his written objection to the charge,
appellant requested an instruction requiring jury unanimity as to whether he
committed murder by (a) intentionally or knowingly causing Anna=s death, or (b) intending to cause
serious bodily injury and committing an act clearly dangerous to human life
that caused Anna=s death.  Compare Tex. Penal Code Ann. ' 19.02(b)(1) (defining murder as
intentionally or knowingly causing death) with id.  ' 19.02(b)(2) (defining murder as
causing death by committing an act clearly dangerous to human life with the
intent to cause serious bodily injury).

We begin review of a jury unanimity challenge by examining
the language of the statute to determine the elements of the crime and whether
the legislature has created a single offense with multiple or alternate methods
of commission.  Jefferson v. State,
189 S.W.3d 305, 311 (Tex. Crim. App. 2006). 
While jury unanimity is required on the essential elements of an
offense, the jury generally is not required to return a unanimous verdict on
the specific method of committing a single offense.  Id.; see also Ngo v. State, 175
S.W.3d 738, 747 n.32 (Tex. Crim. App. 2005) (en banc).  








Here, the statute under which appellant was convicted does
not describe different offenses, but merely sets forth different methods of
committing the same offense.  See
Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (en banc) (op.
on reh=g). 
Although sections 19.02(b)(1) and (b)(2) differ in their descriptions of
the mental state required for culpability, jurors are not required to agree on
the defendant=s specific mental state; rather, they
need only agree that the defendant possessed one of the alternate mental states
that satisfy the element of intent under the statute.  See Jefferson, 189 S.W.3d at 313
(holding that a jury need not agree on the method of committing an offense
where the different possibilities each Ainvolve[d] the same injury to the
same child during the same transaction with a similar level of culpability.@); see also Barfield v. State,
202 S.W.3d 912, 916 (Tex. App.CTexarkana 2006, pet. ref=d) (holding that a general verdict is
appropriate when the jury can convict under '19.02(b)(1) or (b)(2)).  We therefore overrule appellant=s third issue.

IV. 
Conclusion

Having overruled each of appellant=s issues, we affirm the judgment of
the trial court.

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion
filed April 24, 2007.

Panel consists of Justices
Anderson, Hudson, and Guzman.

Publish C Tex. R. App.
P. 47.2(b).











[1]  Specifically,
appellant was charged with Anna=s murder by striking her with an unknown object, and
either intentionally or knowingly causing her death, or intentionally or
knowingly committing an act clearly dangerous to human life with the intent to
cause serious bodily injury.  As part of
the same criminal episode, appellant was also indicted for injury to a child
and aggravated sexual assault; however, the State elected to prosecute the
murder charge separately.





[2]  Dr. Pustilnik
explained that, due to post-mortem chemical changes, the exact mechanism of
Anna=s death could not be determined.  





[3]  Incongruously,
the certificate lists the time of Anna=s death
as 6:07 a.m., but does not list the date of death.  Moreover, this time is three hours after the
time when her body was reportedly found. 
Inasmuch as the certificate was completed by Dr. Pustilnik, who
testified that the exact time of death could not be determined, this entry is
an apparent mistake.





[4]  44 S.W.3d 98,
101 (Tex. App.CHouston [14th Dist.] 2001, pet. dism=d).  





[5]  Appellant
asked the trial court to charge the jury regarding the law of criminal
responsibility under Texas Penal Code sections 7.02(a)(2) (making one a party
if the person, Aacting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense@) and
(a)(3) (making one with a duty to prevent the offense a party if that person, Aacting with intent to promote or assist its
commission, . . . fails to make a reasonable effort to prevent commission of
the offense@) (Vernon 2006). 
The trial court instead charged the jury that A[a] person is criminally responsible if the result
would not have occurred but for his conduct, operating either alone or
concurrently with another cause, unless the concurrent cause was clearly
sufficient to produce the result and the conduct of the actor was clearly
insufficient.@   See Tex. Penal Code Ann. ' 6.04(a) (Vernon 2003) (defining the level of
causation required for criminal responsibility).  Appellant does not argue that the trial court
erred in submitting this definition of criminal responsibility or in failing to
submit his proposed instruction.





[6]  Although the
letter implies that appellant did not act with a culpable mental state,
appellant was not required to present such evidence at trial and did not do so.





[7]  Judy is
Bridget=s mother.  The
identities of AMammaw@ and Kari are not indicated in the record.