Affirmed and Memorandum Opinion filed September 25, 2007








Affirmed and Memorandum Opinion filed September 25, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

 NO. 14-06-00809-CR 

NO. 14-06-00810-CR

_______________

 

JOHN PAUL BANG, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 240th District Court

 Fort Bend County, Texas

Trial Court Cause Nos. 41,761 &
41,762

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, John Paul Bang, guilty of aggravated assault and murder.  The
trial court assessed concurrent sentences of twenty years= confinement for the aggravated
assault conviction and forty-eight years= confinement for the murder
conviction.  In three issues, appellant contends the evidence is legally and
factually insufficient to support each conviction, and the trial court erred by
admitting demonstrative evidence of the weapons used in the offenses.  All
dispositive issues are clearly settled in law.  Accordingly, we issue this
memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.








 I. Background

According
to the State=s evidence, on the night of June 19, 2002, Jose Pena, a recent high
school graduate, hosted a party at his home in Sugar Land, Texas.  Pena=s ex-girlfriend, Ashley Pittman,
arrived at the party heavily intoxicated.  She told Pena that Ted Rhea had
given her alcohol and some pills.  When Rhea later called Pittman, Pena took
the phone and argued with Rhea.  Around midnight, Rhea and Johnny Blevins
arrived at the party in Blevins=s car.  Pena pulled Rhea out of the car and struck him
numerous times, leaving him nearly unconscious.  During the fight, a partygoer
shattered the windshield of Blevins=s car.  Unable to discover who broke
his windshield, Blevins drove away from the party with Rhea.

As they
drove back to Rhea=s apartment, Blevins stopped at his own apartment and
retrieved a shotgun and an AK-47 assault rifle.  Blevins and Rhea then
continued to Rhea=s apartment where they were met by appellant, R. Lee
Thammavong, Somseth Chindavong, and a number of others.  Upon arriving at his
apartment, Rhea took a short nap.  After he awoke, he discovered appellant,
Blevins, Chindavong, and Thammavong planning a retaliation for the breaking of
Blevins=s windshield.   Rhea then returned
inside to sleep for the night.  The group ultimately decided to use the guns
from Blevins=s apartment to fire upon the Pena house, intending to vandalize the home
and frighten its occupants.  Appellant was to use the shotgun while Blevins
fired the rifle.  Additionally, they decided to use appellant=s truck as a getaway vehicle for the
shooters with Blevins or Thammavong acting as the getaway driver.  Chindavong
and Jacquelyn Nguyen were to follow in a separate car to act as lookouts. 

Around
3:30 a.m. on June 20, 2002, the group carried out the planned shooting.  As a
result, Pena was shot through the leg, and Robert Ward was shot in the head. 
Pena was hospitalized for two weeks and required four surgeries.  He suffered
permanent scars and nerve damage to his leg.  Ward died as a result of his
injuries.    








After
the shooting, appellant, Blevins, Thammavong, Chindavong, and Nguyen returned
to Chindavong=s apartment.  Shortly thereafter, Joshua Nguyen, Jacquelyn=s brother, heard appellant and
Blevins boasting about their involvement in the shooting.

After learning
about Ward=s death, the participants decided to hide the guns used in the shooting. 
Appellant, Blevins, Chindavong, and Thammavong ultimately buried the two guns
outside Thammavong=s father=s farm in Alvin, Texas.

Although
Sugar Land police investigated the shooting, they decided there was
insufficient evidence to prosecute until November 2004 when Jacquelyn Nguyen,
arrested on federal drug charges, agreed to testify concerning the shooting at
issue.  Based on information provided by Nguyen, police located Thammavong, who
in turn disclosed the location of the two guns.  The police located and
recovered the guns, but both were badly corroded due to exposure to the
elements.

Appellant
was eventually arrested.  Firearms experts, investigating officers,
eyewitnesses, and accomplices Blevins and Thammavong testified at trial.  The
jury convicted appellant for the aggravated assault of Pena and the murder of
Ward.

II. Legal Sufficiency of the Evidence








In his
first issue, appellant claims the evidence is legally insufficient to support
his convictions for aggravated assault and murder.  In evaluating legal
sufficiency, we view the evidence in the light most favorable to the verdict
and determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex.
Crim. App. 2005).  We ensure only that the jury reached a rational decision and
do not act as a second arbiter of the weight and credibility of testimony.  Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).  The jury  is the
sole judge of the credibility of witnesses and is free to believe or disbelieve
all or part of a witness=s testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).

Specifically,
appellant claims the evidence is legally insufficient to support his
convictions because 1) he lacked the culpable mental state for either offense;
2) Blevins=s culpable mental state and actions did not establish appellant=s guilt; 3) the State failed to
provide sufficient corroborating evidence to support the accomplice testimony;
and 4) with respect to the aggravated assault conviction, the State failed to
prove Pena suffered serious bodily injury. 

A.        Culpable
Mental State 

1.         
Aggravated Assault

A person
commits aggravated assault if he 1) intentionally, knowingly, or recklessly causes
bodily injury to another and, in the course of causing such bodily injury, uses
or exhibits a deadly weapon; or 2) intentionally, knowingly, or recklessly
causes serious bodily injury to another.  See Tex. Pen. Code Ann. '' 22.01B02 (Vernon 2003).  Assault by causing bodily injury under Penal
Code section 22.01(a)(1) is a result-oriented offense.  Ford v. State,
38 S.W.3d 836, 844 (Tex. App.BHouston [14th Dist.] 2001, pet. ref=d).  Therefore, the State must prove
the defendant caused the result with the requisite culpable mental state.  See
id.  The Penal Code defines the culpable mental states with respect to the
result of a defendant=s conduct as follows:

(a) A
person acts intentionally, or with intent, with respect to . . . a result of
his conduct when it is his conscious objective or desire to . . . cause the
result.

(b) . . . A
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.








(c) A person  acts recklessly, or is reckless, with
respect to . . . the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that . . . the result will
occur.  The risk must be of such a nature and degree that its disregard constitutes
a gross deviation from the standard of care than an ordinary person would
exercise under all the circumstances as viewed from the actor=s standpoint.

Tex. Pen. Code Ann. ' 6.03 (Vernon 2003)

The jury heard evidence supporting
the State=s contention that appellant acted recklessly with respect to the result
of his conduct.  Appellant, Blevins, Thammavong, and Chindavong, planned to
shoot at the Pena house with the intent to frighten its occupants.  Blevins
testified that appellant fired a shotgun multiple times at Pena=s residence while Blevins fired an
assault rifle.  In the course of the shooting, Pena was shot through the leg.  
Even if appellant did not intentionally or knowingly cause injury to Pena, the
jury could have reasonably concluded that appellant=s conduct was at least reckless. 
Firing a shotgun at a residence at 3:30 a.m. is a gross deviation from the
standard of care a reasonable person would exercise.  A reasonable person would
understand that, at 3:30 a.m., a residence most likely contains sleeping
occupants, and firing a gun at an occupied residence involves a high risk of
injury to a resident.  Therefore, the evidence is legally sufficient to support
the jury=s finding that appellant possessed
the requisite culpable mental state for aggravated assault.

2.         Murder

A person is guilty of murder if he 1)
intentionally or knowingly causes the death of another; 2) commits an act
clearly dangerous to human life with the intent to cause serious bodily injury;
or 3) intentionally or knowingly commits a felony, other than manslaughter, and
in the course of and in furtherance of that offense  he commits an act clearly
dangerous to human life that causes the death of an individual.  See Tex. Pen. Code Ann. ' 19.02 (Vernon 2003). 








Here,
the State presented evidence that appellant intentionally or knowingly
committed a felony and, in the course of and in furtherance of that offense, he
committed an act clearly dangerous to human life that caused the death of an
individual.  See id.  A person is guilty of felony deadly conduct when
he Aknowingly discharges a firearm at or
in the direction of . . . a habitation . . . and is reckless as to whether the
habitation . . . is occupied.@  Tex. Pen. Code Ann. ' 22.05 (b)(2), (e) (Vernon 2003).  The evidence shows that appellant
intended to fire the shotgun at the Pena residence, a habitation.  As stated
above, firing a shotgun at a residence at 3:30 a.m. is reckless.  Therefore,
appellant=s act constituted felony deadly conduct. Accordingly, appellant possessed
the requisite mental state for murder, even if he did not intentionally and
knowingly kill Ward or intend to cause Ward serious bodily injury. 

B.        Accomplice
Liability

Appellant
further suggests the evidence was legally insufficient to prove he committed
either offense because Blevins fired the shots that injured Pena and killed
Ward.  Appellant contends that he may not be held responsible for Blevins=s actions.  However, under the law of
parties, a person is criminally responsible as a party to an offense if the
offense is committed by his own conduct or by the conduct of another for which
he is criminally responsible.  Tex. Pen.
Code Ann. ' 7.01 (Vernon 2003).  A person is criminally
responsible for the conduct of another if, acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense.  Tex. Pen. Code Ann. ' 7.02 (Vernon 2003); see also  Goff v. State, 931
S.W.2d 537, 545 (Tex. Crim. App. 1996) (stating a defendant=s criminal responsibility may be
enhanced to acts in which he is not the primary actor under the law of
parties).

Appellant
intended to, and did, aid Blevins in the assault on Pena and the occupants of
his house.  Appellant aided Blevins in planning the assault in order to assist
Blevins=s retaliation for the breaking of his
windshield.  Appellant then actually fired a shotgun at Pena=s home during the assault. 
Therefore, even if Blevins fired the shots that injured Pena and killed Ward,
appellant may be held criminally responsible for Blevins=s actions under the law of parties.  See
Goff, 931 S.W.2d at 545.

 








C.        Accomplice
Testimony

Next,
appellant argues that the evidence is legally insufficient because there was
insufficient corroboration of accomplice testimony.  Under the
accomplice-witness rule, a defendant cannot be convicted based on the testimony
of an accomplice unless the testimony is corroborated by other evidence tending
to connect the defendant with the offense committed.  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  To
determine whether sufficient corroboration exists, we eliminate the accomplice
witness=s testimony from consideration and
then determine whether any of the remaining evidence tends to connect the
accused with commission of the crime.  Longoria v. State, 154 S.W.3d
747, 758 (Tex. App.BHouston [14th Dist.] 2004, pet. ref=d).  The corroborating evidence need
not directly link the accused to commission of the offense, nor must it be
sufficient in itself to establish guilt.  Id.  The accomplice-witness
rule is satisfied if there is some non-accomplice evidence that tends to
connect the accused to commission of the offense alleged.  Id. 

Here,
the State presented the testimony of two, and possibly three, accomplices:
Blevins, Thammavong, and Jacquelyn Nguyen.  Blevins and Thammavong are clearly
accomplices; however, there was conflicting evidence regarding whether Nguyen
was an accomplice.  The jury was instructed that if it believed she was an
accomplice that it could not convict appellant on her testimony alone and that
it could not use her testimony to corroborate other accomplice testimony.  We
will assume, arguendo, the jury believed Jacquelyn Nguyen was an
accomplice.[1]  All three
testified that they witnessed appellant shoot the Pena house with a shotgun. 
Additionally, Blevins and Nguyen testified that appellant participated in
planning the shooting.  








The
State presented sufficient evidence corroborating this testimony to satisfy the
accomplice-witness rule.  Disregarding all accomplice witness testimony, the
record contains the following evidence.  Rhea testified that he observed
appellant participating in the planning meeting with Blevins.  Further, Joshua
Nguyen=s testimony established that, shortly
after the shooting, appellant boasted about his use of the shotgun at the Pena
residence. Additionally, investigating officers presented extensive evidence 
showing that a shotgun and assault rifle were used in the assault on the Pena
home.  This evidence tends to connect appellant to the offense.  Therefore, it
sufficiently corroborates the accomplice witness testimony presented at trial.

D.        Serious
Bodily Injury to Pena

Finally,
appellant argues that the evidence is legally insufficient to support his
conviction for aggravated assault because the record is silent regarding
whether Pena suffered serious bodily injury.  ASerious bodily injury@ is defined as Abodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@  Tex. Pen. Code Ann.
' 1.07 (a) (46) (Vernon 2003).  Here,
Pena testified at trial that he still has scars and nerve damage causing him to
feel numbness in his leg.  These injuries support the jury=s finding that Pena suffered serious
bodily injury.  

Further,
to support a conviction for aggravated assault, the Texas Penal Code requires
either that appellant caused serious bodily injury or caused bodily injury and
used or exhibited a deadly weapon.  See Tex. Pen. Code Ann. ' 22.02(a).  A deadly weapon is a
firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury.  Tex.
Pen. Code Ann. ' 1.07(a)(17)(A) (Vernon
2003). Thus, even if appellant did not cause serious bodily injury, he
and Blevins caused bodily injury to Pena using a deadly weapon.  Accordingly,
the evidence is legally sufficient to support appellant=s conviction for aggravated assault
even if Pena did not suffer serious bodily injury. 








In sum,
the evidence is legally sufficient to support the jury=s findings that appellant committed
aggravated assault and murder.

                    II. Factual Sufficiency of the Evidence

In his
second issue, appellant claims that the evidence is factually insufficient to
support his convictions for aggravated assault and murder.  To determine
factual sufficiency, we view all the evidence in a neutral light and will set
aside the verdict only to prevent manifest injustice.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  In conducting a
factual-sufficiency review, we engage in a two prong test to determine whether
there is some objective basis to find: 1) that the evidence in support of the
jury=s verdict, although legally
sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
unjust; and 2) in considering conflicting evidence, the jury=s verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  Id. at 417.  

To support his factual-sufficiency
challenge, appellant notes that several witnesses presented some conflicting
testimony.  In particular, Blevins testified that Thammavong acted as the
getaway driver while Jacquelyn Nguyen and Thammavong each testified that
Blevins was the getaway driver.  Also, Blevins testified that Thammavong was
present at the planning meeting, while Joshua Nguyen testified that he never
saw Thammavong at the apartment while the meeting was occurring.  However, all
witnesses concurred as to the material facts of the incident: appellant was
present at the planning meeting; appellant fired a shotgun at the Pena house;
and appellant=s car was used as the getaway vehicle for the shooters.  Therefore, we
cannot conclude that the evidence is so weak that the jury=s verdict appears to be clearly wrong
and unjust; or that the cited inconsistencies render the verdict contrary to
the great weight and preponderance of the evidence.  We overrule appellant=s second issue.

 








III.
Demonstrative Evidence 

In his third issue, appellant claims
the trial court committed reversible error by admitting two guns as
demonstrative evidence.  The trial court admitted a shotgun and an AK-47 rifle
as demonstrative evidence to show the appearance of the guns used in the
offense.  At trial, the State asserted the original guns were unavailable
because they were so deteriorated due to their exposure to the elements that
they would not be useful to the jury.  Appellant argues that the demonstrative
guns were inadmissible because the original weapons were available at trial,
the demonstrative guns were irrelevant to any material issue in the case, and
the probative value of the demonstrative evidence was substantially outweighed
by the danger of unfair prejudice. Additionally, appellant argues that the
demonstrative evidence was not the best evidence because the original guns used
in the crime were available, despite their corroded state.

We review a trial court=s admission of demonstrative evidence
for abuse of discretion.  Simmons v. State, 622 S.W.2d 111, 113 (Tex.
Crim. App. 1981).  We have held that demonstrative evidence is admissible if 1)
the original is not available; 2) if available, the original would be
admissible; 3) it is relevant and material to an issue in controversy; 4) its
probative value outweighs any inflammatory effect; and 5) the jury is
instructed that the object is not the one used in the commission of the crime,
and is to be considered solely as evidence that demonstrates the appearance of
the object used in the offense.  Miskis v. State, 756 S.W.2d 350, 352
(Tex. App.BHouston [14th Dist.] 1988, pet. ref=d) (citing Simmons, 622 S.W.2d
at 113). 








In this case, the trial court acted
within its discretion by concluding the original weapons were Aunavailable@ because they had become corroded and
degraded since the offenses; thus, replicas were necessary to show the jury the
state of the guns at the time of the offense.[2] 
Further, the original weapons were admissible and relevant to a material issue
in the case because the jury was charged with finding whether appellant
committed aggravated assault using or exhibiting a deadly weapon.  See Tex. R. Evid. 401 (providing that
relevant evidence is Aevidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action more or less
probable than it would be without the evidence@).  By admitting the guns as
demonstrative evidence, the court allowed the jury to see examples of the
weapons used during the offenses.  The demonstrative weapons were the same
models as the original weapons, and therefore had no inflammatory attributes. 
The trial judge instructed the jury that the demonstrative guns were not the
ones used in the shooting at issue.  Therefore, we find that the trial court
did not abuse its discretion by admitting the demonstrative guns.

Moreover, appellant=s reliance on the Best Evidence Rule
is misguided.  See Tex. R. Evid. 1002,
1003.  The Best Evidence Rule applies only to writings or documents.  The rule
does not apply to weapons.  See Simmons, 622 S.W.2d at 114. 








Additionally, even if the
demonstrative guns were inadmissible, we conclude that any error was harmless. 
Erroneous admission of evidence is nonconstitutional error.  See Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  We must disregard
nonconstitutional error unless it affects an appellant=s substantial rights.  Tex. R. App. P. 44.2(b); Goudeau v.
State, 209 S.W.3d 713, 721 (Tex. App.BHouston [14th Dist.] 2006, no pet.). 
A substantial right is affected when the error had a substantial and injurious
effect on the jury=s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997); Goudeau, 209 S.W.3d at 721.  Substantial rights are
not affected by the erroneous admission of evidence if the appellate court,
after examining the record as a whole, has fair assurance that the error did
not influence the jury, or had but a slight effect.  Johnson, 967 S.W.2d
at 417.  In assessing the likelihood that the jury=s decision was adversely affected by
the error, we consider everything in the record, including testimony and
physical evidence admitted for the jury=s consideration, the nature of the
evidence supporting the verdict, the character of the alleged error, and how it
might be considered in connection with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355  (Tex. Crim. App. 2002).  We may also consider
the jury instructions, the State=s theory, any defensive theories,
closing arguments, whether the State emphasized the error, and even voir dire,
if applicable.  Id. at 355-56.

As we have discussed, the State
presented ample evidence demonstrating appellant=s guilt.  Before the demonstrative
evidence was introduced, the State presented testimony showing that appellant
participated in planning the shooting, actually engaged in the shooting, and
agreed to use his truck as a getaway vehicle.  Neither party relied on
admission of the demonstrative evidence in its theory of the case.  The State
did not emphasize the demonstrative evidence in its jury argument. 
Accordingly, we have fair assurances that any error in admitting the
demonstrative evidence did not influence, or had only a slight effect, on the
jury.  We overrule appellant=s third issue.

Accordingly, the judgment of the
trial court is affirmed.

 

 

 

/s/        Charles W.
Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 25, 2007.

Panel consists of Justices Yates,
Seymore, and Edelman.*

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  To be an accomplice, the witness=s participation with the defendant must involve some
affirmative act that promotes the commission of the offense with which the
defendant is charged.  Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim.
App. 2006).  Nguyen testified that she merely accompanied appellant and
observed appellant and Blevins shoot the Pena home.  However, Blevins and
Thammavong testified that she accompanied them to the shooting to act as a
lookout.  Regardless, we need not conclusively decide whether  Jacquelyn Nguyen
is an accomplice for purposes of our disposition.





[2]  Some of our sister courts have declined to follow
the unavailability requirement recognized in Miskis.  See Onwuke v.
State, 186 S.W.3d 81, 84 (Tex. App.BHouston
[1st Dist.] 2005, no pet.); Torres v. State, 116 S.W.3d 208,
213S14 (Tex. App.BEl
Paso 2003, no pet.).  Regardless, even if we apply the unavailability
requirement followed by this court, we cannot conclude the trial court abused
its discretion by finding the original guns were unavailable.





*  Senior Justice Richard H. Edelman sitting by
assignment.