Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00674-CR

Gerardo **GUTIERREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-4590
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed: September 1, 2010

AFFIRMED AS MODIFIED

Gerardo Gutierrez was convicted of murder as an habitual offender and was sentenced to life imprisonment. In one issue, he challenges the legal sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

**BACKGROUND**

At approximately 7:00 a.m. on Sunday, October 15, 2006, a man going to work discovered the naked body of a woman lying face down in the parking lot of a warehouse building at 8 Burwood Lane between San Pedro and Blanco Road in San Antonio, Texas. The woman's body was covered in blood, dirt, insulation fibers, and soot, and was surrounded by pools of blood. She had multiple stab wounds to her chest and back from a sharp instrument like a knife, three of which wounds punctured her heart, and her throat had a gaping wound that had been sawed and slashed open; she had suffered blunt force trauma over her entire body which left a linear pattern, as if she had been run over by a vehicle or dragged on the asphalt pavement; and she had been doused with gasoline and burned on her head, face, and body. An autopsy showed the cause of death was multiple stab wounds. A trail of blood led away from her body to a large pile of burnt insulation in the back area of the adjacent warehouse at 10 Burwood Lane; the six to eight-foot tall gate at 10 Burwood had been broken open. A used condom was found lying between the victim's body and the large pile of burnt insulation and there were several large pools of blood in the immediate area. The condom was "encircled . . . by blood on either side," and appeared to be "a fresh condom that hadn't been there very long" based on its white color despite the dirt, debris and soot in the area.[1] Semen collected from the condom was submitted for DNA testing. A burned blouse and pants were also found next to the pile of burnt insulation; they were later identified as the clothing the victim wore the night before. A knife was collected from the crime scene, which was determined to be consistent with the injuries that caused the victim's death. The results of a sexual assault kit were inconclusive. The

---

[1] At trial, three years later, the condom appeared "yellow and discolored" and "dried up."

victim was identified as 23 year old Magdalena "Maggie" Martinez Battise, a single mother of four children.

In the following days, Detective Roberts interviewed Andrew Orosco, Maggie's boyfriend, and Erica and John Castro, the two friends she had gone out with on Saturday night, October 14, 2006. All three friends were emotionally distraught, immediately responsive, and fully cooperative with Detective Roberts. Erica Castro told the detective that she and her husband went out with Maggie on the Saturday night before her murder. Erica stated that Maggie left the West Avenue Sports Bar with two guys at approximately 1:45 a.m. Erica was unable to identify the two guys from a photo lineup; she did identify the clothing Maggie wore on Saturday night. DNA testing on the samples given by Orosco and the Castros did not yield a match to any of the evidence found at the crime scene, including the semen from the condom. Detective Roberts ultimately ruled out all three friends as suspects in Maggie's murder.

Erin Reat of the Bexar County Criminal Investigations Laboratory ("BCCIL") performed a DNA analysis on several items of evidence collected from the scene. The blood at the scene matched that of the victim. Based on the semen from the condom, Reat developed a DNA profile that was foreign to the victim and which did not match any of the three friends. After a period of time, another lab contacted Reat to inform him they had matched the foreign DNA profile developed from the condom to that of Gerardo Gutierrez. Reat passed the information on to Detective Roberts, who contacted Gutierrez and eventually obtained a buccal swab DNA sample from him. Reat performed DNA testing on the swab and confirmed that Gutierrez's DNA matched the DNA of the semen collected from the condom, leading to Gutierrez's arrest. Reat later performed additional DNA analysis which again confirmed the match. During his communications with Detective

Roberts, both prior to and after his arrest, Gutierrez made several voluntary statements of an inculpatory nature. After his arrest, Gutierrez provided Detective Roberts with an alibi which was later proved to be false.

The State indicted Gutierrez for Maggie's murder, and also pled an enhancement based on his prior felony convictions for sexual assault and escape. After a one-week trial, a jury found Gutierrez guilty of murder as charged in the indictment. Gutierrez elected to be punished by the judge, and pled "true" to the enhancement as an habitual offender. After obtaining a pre-sentence report and conducting a punishment hearing, the trial court imposed a sentence of life imprisonment. Gutierrez now appeals.

### ANALYSIS

In his sole issue on appeal, Gutierrez contends the evidence is legally insufficient to support his conviction because the evidence did not prove all the essential elements of murder beyond a reasonable doubt, particularly Gutierrez's identity as the perpetrator. The State responds that the cumulative force of the DNA evidence linking Gutierrez to the murder scene and to the victim's blood, Gutierrez's false alibi, and his voluntary statements to police, along with the reasonable inferences from such evidence, support the legal sufficiency of the jury's guilty verdict. We agree.

In determining legal sufficiency, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony; therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Clayton*, 235 S.W.3d at

778; *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). A jury is also permitted to draw reasonable inferences from the evidence. *Clayton*, 235 S.W.3d at 778; *Mosley*, 983 S.W.2d at 254-55. We apply the same standard of review to direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778 (noting circumstantial evidence is equally as probative as direct evidence, and may alone be sufficient to prove guilt).

To obtain a conviction for murder as charged in the indictment, the State was required to prove that Gutierrez intentionally or knowingly caused the victim's death, or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the victim's death. *See* TEX. PENAL CODE ANN. § 19.02 (b)(1), (2) (Vernon 2003). Beyond proving the elements of the offense, the State must prove beyond a reasonable doubt that the accused is the person who committed the alleged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). The identity of the accused as the perpetrator may be proved by direct or circumstantial evidence, or by inferences drawn from such evidence. *Roberson*, 16 S.W.3d at 167.

On appeal, Gutierrez complains that the State "offered no forensic or physical evidence tending to inculpate the Appellant" other than "a freshly used condom containing semen linked to the Appellant through DNA testing" which was "located 48 feet away from the complainant but right next to the complainant's blood." The strongest evidence linking Gutierrez to the murder was the fresh condom containing his semen surrounded by pools of the victim's blood and located near the victim's body and burnt clothing. Evidence was presented that the DNA match was confirmed three times, twice by Reat at BCCIL and once by an independent lab. Detective Roberts testified that

Gutierrez never attempted to explain how a used condom with his semen happened to be at the murder scene near the victim's body.

In addition to the DNA evidence, Detective Roberts testified that, after his arrest, Gutierrez provided an alibi which proved to be false. After he waived his *Miranda* rights, Gutierrez told Roberts that he was with two friends, Duane Mitchell and Greg Damore, at Hooligans in the Live Oak area on Saturday night, October 14, 2006, and that they left the bar at approximately 2:30 a.m. Gutierrez stated that Duane Mitchell's bank records would support his alibi because Mitchell paid for the drinks and "bank statements don't lie." When Detective Roberts obtained Mitchell's bank records, they showed a bill from Hooligans—but for Friday, October 13, not Saturday. Gutierrez had told Detective Roberts that he was out with a girl, whose name and phone number he could not recall, on that Friday night. A defendant's lies to police officers and giving of a false alibi is conduct that shows a consciousness of guilt, and may be considered as circumstantial evidence of guilt. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (making false statements to cover up crime is evidence indicating a consciousness of guilt and is admissible to prove commission of offense); *Longoria v. State*, 154 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (attempt to procure false alibi is some evidence of guilt); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App. —Austin 1990, no pet.) (defendant's conduct after crime indicating consciousness of guilt is "one of the strongest kinds of evidence of guilt").

In addition to the DNA evidence and his false alibi, Gutierrez made several voluntary and inculpatory statements, both before and after his arrest, about which Detective Roberts testified at trial. During the ride to the police station for a voluntary, non-custodial interview with Roberts, Gutierrez made several spontaneous comments to Roberts describing his views on the treatment of

women and girls—before Roberts had informed him the investigation involved a female victim. Specifically, Gutierrez told Roberts that he "used to treat women bad . . . like a piece of meat," but now he knows women "should be . . . treated good, put up on pedestals." When they drove past a drive-through beverage barn with bikini-clad waitresses, Gutierrez exclaimed with disgust, "My God, what are they doing?" Then, as they drove by Fox Tech High School, a young 12 or 13 year-old girl was walking by wearing her school uniform and Gutierrez remarked, "Poor little girl. She doesn't realize how many people will treat her bad. Doesn't she realize what they'll do to her." Detective Roberts testified the comment was made purely "out of the blue," and struck him as odd, and "kind of freaky." These unsolicited comments by Gutierrez support a reasonable inference that Gutierrez already knew the reason he was being questioned, and that it involved a female victim.

During Roberts' pre-arrest, non-custodial interview with him, Gutierrez admitted that he had gone to the West Avenue Sports Bar in the past, lived near the location of the murder, and was familiar with the area of Burwood and Blanco. He denied knowing the victim when shown her picture. Gutierrez remained nonchalant and emotionally detached throughout the interview, showing no reaction to the news he was a suspect in a murder investigation and that his DNA matched the DNA found in a condom at the murder scene; instead, Gutierrez focused his efforts on inquiring about what evidence Roberts had against him and whether the victim's DNA was mixed with his DNA on the condom. Gutierrez repeatedly replied, "I don't know" when asked to explain the presence of his DNA on the condom at the murder scene; at one point, he explained that he lives nearby. During a break in the interview, a video camera captured audio of Gutierrez whispering to a picture of the victim, "I don't remember you."

During the interview with Detective Roberts after his arrest and waiver of his *Miranda* rights, Gutierrez explained his alibi, which was later proven false. He again did not attempt to explain why a condom with his semen was found near the murder victim, and he again tried to find out what other evidence the police had against him. During a break in the interview, the video camera captured Gutierrez making several phone calls—to his employer, his sister, and to Duane Mitchell. During each call, he can be heard explaining that all the police have as evidence is a condom with his semen found next to the murder victim. Gutierrez tells his employer that he "could probably [have] had sex somewhere else and threw it by there and that's it . . . ." Gutierrez never mentioned that explanation to Detective Roberts.[2] In addition to Detective Roberts' testimony about Gutierrez's conduct during the interviews, the jury viewed the DVDs of both interviews and observed Gutierrez's demeanor and conduct for themselves. Finally, in contrast to Maggie's three friends who were ruled out as suspects, Gutierrez did not respond to Detective Roberts' attempts to contact him about the investigation until almost a month after the murder—even though Roberts left "10 to 15 business cards" at Gutierrez's residence. Gutierrez never offered any explanation for his delay in responding to Roberts' attempts to contact him. A defendant's demeanor and conduct, including post-incident statements made to police and others, that show a consciousness of guilt constitute circumstantial evidence that is relevant on the issues of identity and intent. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998) (proof of intent is most often established by circumstantial evidence because an accused's intent is "concealed within his own mind and can only be determined from his words, acts, and conduct"); *Barcenes v. State*, 940 S.W.2d 739, 744-45 (Tex. App.—San Antonio 1997, pet.

---

[2] Both Detective Roberts and Officer Antz, who took measurements of the crime scene area, testified it was physically impossible for Gutierrez to have thrown the condom from the street over the six to eight-foot gate and more than 150 feet inside the gate to land where it was found near the victim's body.

ref'd) (post-incident statements by accused can indicate a consciousness of guilt, especially when the statements are grossly inconsistent with the other evidence); *Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (defendant's statements to police on videotape which contradicted other evidence at trial were relevant and admissible to show his consciousness of guilt).

Based on our review of the record, we conclude any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *Clayton*, 235 S.W.3d at 778. The inferences necessary to support the jury's guilty verdict are reasonable based on the combined and cumulative force of all the evidence, including the DNA evidence, when viewed in the light most favorable to the verdict. *See Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007); *see also Clayton*, 235 S.W.3d at 778 (when record supports conflicting inferences, appellate court presumes the jury resolved the conflicts in favor of the verdict and defers to that determination in a legal sufficiency review). Accordingly, we overrule Gutierrez's sole issue on appeal.

We note that the judgment contains a clerical error in that it recites the jury found Gutierrez guilty of capital murder and that punishment was assessed by the jury, when in fact Gutierrez was found guilty of murder and punishment was assessed by the court. Accordingly, we modify the trial court's judgment to reflect that the jury found Gutierrez guilty of murder, and that, based on his election, the court assessed his punishment. We affirm the trial court's judgment as modified.

Phylis J. Speedlin, Justice

DO NOT PUBLISH